## Cooperative Fire Insurance Ass'n v. Ronald Combs and Dudley F. Coy and Christine Weise, Co-Executors of the Estate of Lee Felch Coy

[648 A.2d 857]

No. 93-435

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed August 5, 1994

*Charity A. Downs* of *Conley & Foote,* Middlebury, for Plaintiff-Appellant.

A. *Gregory Rainville* of *Farrar & Rainville* and *Michael Rose* (On the Brief), St. Albans, for Intervenors-Appellees Dudley F. Coy and Christine Weise, Co-Executors of the Estate of Lee Felch Coy.

**Gibson, J.** Plaintiff sought a declaratory judgment in superior court to determine its rights and duties in a wrongful death action brought against its insured, Ronald Combs, by the estate of Lee F. Coy. The executors of the Coy estate intervened, and pursuant to stipulation, the superior court has certified to this Court a question regarding the coverage of plaintiff's policy for an intentional act committed when the actor is insane.

Defendant Ronald Combs was charged with the shooting death of Lee Coy in June 1990. He was determined by the court to be incompetent to stand trial, and at all subsequent reviews to date, he has been determined incompetent to stand trial. For purposes of this proceeding, the parties have stipulated that Ronald Combs is insane and was insane on June 3, 1990, the day of the shooting. He is presently hospitalized at the Vermont State Hospital in Waterbury.

█ Plaintiff's insurance policy contains the following exclusionary clause: "This policy does not apply to liability which results directly or indirectly from . . . 8. an intentional act of an Insured or an act done at the direction of an Insured . . . ." In accordance with the stipulation, the superior court has certified the following question to this Court:

> Under an insurance contract where there is an exclusion under the liability coverage for "liability which results directly or indirectly from an intentional act of an insured," is there coverage for an intentional act done by insured while insane or incompetent?

The stipulation that Combs was insane renders the phrase "or incompetent" superfluous, and we will limit our review to acts done while an insured is insane. See *In re W.H.*, 144 Vt. 595, 600, 481 A.2d 22, 26 (1984) (overbroad certified question may be rephrased). We answer the question in the affirmative.

We have not previously considered this issue. Other jurisdictions have considered the issue, however, and two distinct lines of cases have emerged. One view, advocated by the intervenors, is that an insane person cannot act intentionally as a matter of law. See *Globe Am. Cas. Co. v. Lyons*, 641 P.2d 251, 254 (Ariz. Ct. App. 1981); *Mangus v. Western Cas. & Sur. Co.*, 585 P.2d 304, 306 (Colo. Ct. App. 1978); *Northland Ins. Co. v. Mautino*, 433 So. 2d 1225, 1227 (Fla. Dist. Ct. App. 1983); *von Dameck v. St. Paul Fire & Marine Ins. Co.*, 361 So. 2d 283, 288 (La. Ct. App.), *cert. denied*, 362 So. 2d 794 and *cert. denied*, 362 So. 2d 802 (1978); *Ruvolo v. American Cas. Co.*, 189 A.2d

204, 209 (N.J. 1963); *Nationwide Mut. Fire Ins. Co. v. Turner*, 503 N.E.2d 212, 216–17 (Ohio Ct. App. 1986). In addition to holding that intent can be imputed to rational persons only, these cases also point out that the justification for the exclusionary clause—i.e., to deny financial benefit to those who intentionally cause injury—does not exist where a person is unable to conform his behavior to normal standards and will not be influenced by a deterrent factor or financial disincentive. See, e.g., *Globe*, 641 P.2d at 253–54. Moreover, this view adheres to the rule of strictly construing exclusionary clauses against the insurer, see *Ruvolo*, 189 A.2d at 208, and reinforces a policy of narrow construction in order to serve the strong public interest of providing compensation for victims. See *Congregation of Rodef Sholom v. American Motorists Ins. Co.*, 154 Cal. Rptr. 348, 352 (Ct. App. 1979).

A second group of cases, which plaintiff insurance company espouses, holds that so long as there is evidence that the insured understood the physical nature and consequences of his action, he is capable of intent even though he may not be capable of distinguishing between right and wrong or of controlling his conduct. In such cases, the exclusionary clause would foreclose coverage. See *Rajspic v. Nationwide Mut. Ins. Co.*, 662 P.2d 534, 536 (Idaho 1983); *Shelter Mut. Ins. Co. v. Williams*, 804 P.2d 1374, 1382 (Kan. 1991); *Colonial Life & Accident Ins. Co. v. Wagner*, 380 S.W.2d 224, 226 (Ky. Ct. App. 1964); *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 436 (Mich. 1992); *Mallin v. Farmers Ins. Exch.*, 839 P.2d 105, 108 (Nev. 1992); *Johnson v. Insurance Co. of N. Am.*, 350 S.E.2d 616, 620 (Va. 1986). Thus, in *Johnson*, the insured searched for a pistol, loaded it, travelled to the victim's home, waited for the victim, engaged him in conversation, and then shot him at close range, all under the delusion that God had ordered him to do so. The court concluded the insured "knew that he was shooting a human being," and held the exclusionary clause applicable. *Johnson*, 350 S.E.2d at 620. Even under this line of cases, however, there will be coverage if the insured is so mentally ill that he does not, in fact, know what he is doing, as when, for instance, he points a pistol thinking he is peeling a banana. *Id.* Plaintiff concedes that, in such a case, coverage is not excluded.

Intervenors contend that our case law is consistent with the *Globe-Turner* line of cases. See *Goode v. State*, 150 Vt. 651, 652, 553 A.2d 142, 142–43 (1988) (quoting with approval *Goewey v. United States*, 612 F.2d 539, 544 (Ct. Cl. 1979), that term "insane" means "a condition of mental derangement which renders the sufferer incapa-

ble of . . . understanding the nature and effect of his acts, and of comprehending his legal rights and liabilities"); *Hathaway's Adm'r v. National Life Ins. Co.*, 48 Vt. 335, 353 (1875) (policy's exclusionary clause for suicide not applicable where decedent insane). Further, in *Otterman v. Union Mut. Fire Ins. Co.*, 130 Vt. 636, 298 A.2d 547 (1972), we held an exclusion for intentionally caused injury inapplicable where the decedent fired a gun through a wall, injuring a police officer. Not only was there no evidence that decedent knew of the presence of the police officer, but his behavior in the preceding three weeks, together with a history of mental illness, "made it highly improbable that [he] intentionally meant to harm anyone." *Id.* at 641, 298 A.2d at 550. Thus, we implied, at least, that mental illness may negate the element of intent for purposes of insurance coverage.

Plaintiff argues that the exclusionary clause contains no qualification that the actor must be sane, and that the word "intentional" means an act to be "done by intention or design," with the word "intention" defined as "a determination to act in a certain way." See Webster's New Collegiate Dictionary 596 (1981); see also Restatement (Second) of Torts § 8A (1965) ("intention" denotes desire to cause consequences of one's act, or belief that given consequences are substantially certain to result from act). Under a plain meaning construction of the insurance contract, therefore, plaintiff contends that the exclusion should apply.

Plaintiff relies on the *Rajspic-Johnson* line of cases, and in particular on *Mallin*, where the Nevada Supreme Court affirmed summary judgment for the insurance company after the insured had shot and killed his wife and two of her friends, then committed suicide. The court concluded that the insured "knew that shooting his victims in the head would result in their deaths. Thus, it must be fairly said that [he] *intended* to kill them." *Mallin*, 839 P.2d at 107. (Emphasis in original.) *Mallin* thus holds that insanity does not necessarily negate intention for purposes of applying the exclusionary clause: "The rather simple idea of what is intentional and what is accidental is turned awry by modern psychoanalytical . . . theories, which put into question an individual's capacity to exercise free will over his or her actions." *Id.* (footnote omitted).

We are unpersuaded by *Mallin* and by plaintiff's arguments, primarily because in our view this approach oversimplifies the matter. First, coverage in such cases will obtain only where the insured does not know the nature or consequences of his act—e.g., where he believes he is pointing a banana, not a gun. See Salton, *Mental*

*Incapacity and Liability Insurance Exclusionary Clauses: The Effect of Insanity upon Intent*, 78 Cal. L. Rev. 1027, 1065 (1990) (such cases "are extremely underinclusive, retaining coverage for only a very small percentage of people considered mentally ill"). We note that these cases formulate a test for applying the exclusionary clause that is even stricter than the test for insanity in a criminal case, where a defendant is excused from culpability if he was afflicted with a mental disease or defect so as not to be able "to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." 13 V.S.A. § 4801(a)(1); see Model Penal Code § 4.01 (1985).

■ Second, there are more dimensions to mental illness than the nature or moral status of one's acts; mental disease or defect may encompass the will and the emotions as well. See Salton, *supra*, at 1040. An insane person whose will is impaired cannot control his conduct even when he understands the consequences of his acts, and one who is emotionally disordered cannot feel emotions which might, in an ordinary person, provide a check to harmful conduct. See *id*. Although the rationales for excusing criminal conduct and for applying intentional-injury exclusionary clauses are not the same, see *Transamerica Ins. Corp. of Am. v. Boughton*, 440 N.W.2d 922, 925 (Mich. Ct. App. 1989) ("acquittal by reason of insanity . . . is *not* an adjudication of lack of intent") (emphasis in original), we believe the determination of an insane person's intent in a civil case must take into account the multidimensional nature of mental disease or defect.

■■ Third, although this approach views "intent" as a more complex word than its ordinary, popular sense would indicate, see *Mallin*, 839 P.2d at 107, an insane insured's "intent" is not always clear and unambiguous. See *id*. at 114 (Handelsman, Dist. J., dissenting) ("the term 'intent' is a slippery one, subject to myriad applications"). Where exclusionary language is susceptible of more than one meaning, we adopt the interpretation most favorable to the insured. *Utica Mut. Ins. Co. v. Central Vt. Ry.*, 133 Vt. 292, 295, 336 A.2d 200, 202 (1975); see also *Congregation of Rodef Sholom*, 154 Cal. Rptr. at 352 (construing exclusionary clause in light of strong public interest in compensation for victim).

Plaintiff also argues that an interpretation that prevents the exclusionary clause from operating would amount to a rewriting of the policy to insert the term "while sane" into the clause. Such a result, plaintiff asserts, would contradict our holding in *Espinet v.*

*Horvath,* 157 Vt. 257, 597 A.2d 307 (1991). There, the policy excluded coverage for any bodily injury "intended or expected" by the insured, who contended, among other things, that his action, which resulted in bodily injury to the victim, was taken in self-defense and therefore not excluded because it was justified. *Id.* at 261, 597 A.2d at 309–10. We declined "to read into the policy that only injuries inflicted wrongfully are excluded." *Id.* at 261, 597 A.2d at 310. *Espinet* is distinguishable because the language at issue therein was not susceptible of interpretations to exclude only wrongfully inflicted injuries. In the present case, the word "intentional" is subject to alternative interpretations, which the policy writers can clarify if they so desire. See *Ruvolo,* 189 A.2d at 208 (exclusionary clauses are "drawn for the company by men learned in the law of insurance").

For these reasons, we follow the lead of *Otterman* and the *Globe-Turner* line of cases, and hold that as a matter of law an insane person is to be considered incapable of forming an intent to cause injury. Cf. *State Farm Fire & Cas. Co. v. Wicka,* 474 N.W.2d 324, 327 n.4 (Minn. 1991) (citing cases following *Ruvolo,* and noting that leading insurance law treatises lean toward *Ruvolo* view); *Mallin,* 839 P.2d at 112 (Handelsman, Dist. J., dissenting) ("The majority of courts have held that acts committed by an insane insured are not considered 'intentional' for purposes of insurance coverage.") (citing cases).

*The certified question is answered in the affirmative.*