**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,**
Plaintiff,

v.

**Patricia PETTY, Defendant.**

**No. 2:95–CV–63.**

United States District Court,
D. Vermont.

March 8, 1996.

Shapleigh Smith, Jr., Dinse, Erdmann, Knapp & McAndrew, Burlington, VT, for plaintiff.

Matthew F. Valerio, Abatiell, Wysolmerski & Valerio, Rutland, VT, for defendant.

---

1. Defendant's own testimony is unclear as to how many beers she consumed. *See* Def.'s Ex.

### OPINION AND ORDER

SESSIONS, District Judge.

On August 7, 1995, Plaintiff Nationwide moved for summary judgment on its declaratory judgment action against Defendant Petty. Plaintiff seeks an affirmative declaration that it has no duty to defend or indemnify Mrs. Petty, its insured, for claims arising from a physical altercation she had with Irene Branchaud. Defendant opposes this Motion. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. For the reasons set forth below, the Motion for Summary Judgment is GRANTED.

### I. Background

Plaintiff is an insurance company with its principal place of business in Ohio. It issued Defendant and her husband, residents of Rutland, Vermont, a Homeowners' Policy ("Policy") effective from August 25, 1992 to August 25, 1993. The Policy provides, inter alia, insurance coverage for claims arising from legal liability. The following facts gave rise to the underlying action.

On July 19, 1993, Defendant Petty was a patron of the Office Bar and Grill in Rutland, Vermont. She arrived at the bar at approximately 9:00 p.m. and stayed until closing. During the evening, she drank several beers.[1] In the late evening hours, Mrs. Branchaud came into the bar with her daughter, Annette Compagna. Shortly after Mrs. Branchaud's arrival, there was an unpleasant verbal exchange between she and Mrs. Petty. When the bar closed, Mrs. Branchaud left with her daughter. Mrs. Petty was behind them as they walked out the door. Thereafter, a physical altercation between Mrs. Branchaud and Mrs. Petty occurred in which each appears to have struck the other.

According to Mrs. Petty's deposition testimony, the fight took place in the following manner:

I took a right [towards my car], and that's when she grabbed me and started pounding my head.... [A]s soon as they got

A, Petty Dep. at 9–11, attach. to Paper 18.

me free, that she was pounding me, yes, I got up and I did hit her.... [S]he was coming after me again [when I hit her]. Def.'s Ex. A, Petty Dep. at 23–25. When asked why she hit Mrs. Branchaud, Mrs. Petty states, "Well, at that time, I mean, I was petrified." *Id.* at 25. Responding to the question "You intended to hit her?," Mrs. Petty testifies, "Well, yeah.... I was taking care of myself. You have to. Nobody else was going to." *Id.* As a result of this altercation, Mrs. Branchaud allegedly suffered physical injuries.

On December 29, 1994, Mrs. Branchaud filed a complaint against Mrs. Petty and John's 7–11, Inc. d/b/a The Office Bar and Grill seeking relief for the above-described incident. In accordance with a non-waiver agreement, Nationwide began providing a defense to Mrs. Petty in this action. On March 6, 1995, Nationwide filed a declaratory judgment suit against Mrs. Petty claiming that it owes no defense or coverage obligations to her. It argues that Mrs. Petty's actions were intentional and the terms of her Policy specifically exclude personal liability coverage for intentional acts.

In its provision addressing coverage for personal liability, the Policy states it will cover the insured for damages he or she is legally obligated to pay due to an occurrence. *See* Pl.'s Ex. A at 12, attach. to Paper 13. The Policy defines an occurrence as "bodily injury or property damage resulting from one accident or continuous or repeated exposure to the same general condition." *Id.* at 3. It excludes from its personal liability coverage "bodily injury or property damage which is expected or intended by the insured." *Id.* at 13.

Mrs. Petty contends that she does not fall within the exclusionary clause because her level of intoxication prohibited her from forming the requisite intent to cause injury. In support of her argument, Mrs. Petty submits the deposition testimony of Mrs. Branchaud who describes her as having been "drunk," "loud," and "belligerent" on the evening in question. Def.'s Ex. B, Branchaud Dep. at 11–13. Responding to a question about Mrs. Petty's condition on the night of the fight, Mrs. Branchaud's daughter testifies, she was "drunk, very drunk." Def.'s Ex. C, Compagna Dep. at 16.

## II. Discussion

Resolving all ambiguities in the light most favorable to the nonmoving party, the court shall grant summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Foucher v. First Vermont Bank & Trust Co.*, 821 F.Supp. 916, 922 (D.Vt.1993) (citing *Levin v. Analysis & Technology, Inc.*, 960 F.2d 314, 316 (2d Cir.1992)). There is a genuine dispute over a material fact when the evidence requires a factfinder to resolve the parties' differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of identifying those parts of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). To defeat a motion for summary judgment, the nonmoving party must show there is a genuinely triable issue by submitting evidence such that a jury could find in his or her favor. *Anderson*, 477 U.S. at 251, 106 S.Ct. at 2511.

Under Vermont law, an insurer's duty to defend is broader than its duty to indemnify. *City of Burlington v. National Union Fire Ins. Co.*, 163 Vt. 124, 655 A.2d 719, 721 (1994). The duty to defend arises when the claim against the insured potentially falls within the policy coverage. *Garneau v. Curtis & Bedell, Inc.*, 158 Vt. 363, 366, 610 A.2d 132, 134 (1992). To evaluate the duty of the insurer to defend, the court may consider the allegations in the complaint against the insured as well as the known facts underlying the complaint. *Id.* at 366, 610 A.2d 132. The insurer will be released from its duty to defend only if there is no factual or legal basis on which the insurer may be obligated to indemnify. *Id.* at 367, 610 A.2d 132.

As a general rule, the insurer has the burden of proving that an exclusionary clause applies to bar coverage. *See Morrisville Water & Light Dept. v. United States*

*Fidelity & Guaranty Co.*, 775 F.Supp. 718, 725 (D.Vt.1991). *See also, Jacobs v. Loyal Protective Ins. Co.*, 97 Vt. 516, 522, 124 A. 848 (1924). Exclusionary clauses are to be strictly construed against the insurer. *See Ruvolo v. American Cas. Co.*, 39 N.J. 490, 189 A.2d 204, 209 (1963) (cited with approval in *Cooperative Fire Insurance Ass'n. v. Combs*, 162 Vt. 443, 648 A.2d 857, 858 (1994)). A claim falls within the policy coverage if it alleges an "occurrence" that was not expected or intended by the insured. The issue before the Court is whether Mrs. Petty intended to cause bodily injury to Mrs. Branchaud, thereby triggering the exclusionary clause of the Policy.

In defining what constitutes an intentional act to cause bodily injury in the insurance coverage field, the Vermont Supreme Court has stated:

> A wilful or intentional injury implies positive and aggressive conduct, and not the mere negligent omission of duty. 'Wilful' means 'intentional' and is used in contradistinction to 'accidental' or 'unavoidable.' A wilful act implies an intention to cause injury. In its customary usage, intentionally means an act done with intention of purpose, designed and voluntary. (citations omitted).

*Wendell v. Union Mutual Fire Ins. Co.*, 123 Vt. 294, 297, 187 A.2d 331 (1963). Moreover, the Vermont Supreme Court has defined "accident," an essential component of an "occurrence," as an " 'unexpected happening without intention and design.' " *Commercial Union Ins. Co. v. City of Montpelier*, 134 Vt. 184, 186, 353 A.2d 344 (1976) (quoting *Anton v. Fidelity & Casualty Co.*, 117 Vt. 300, 305, 91 A.2d 697 (1952)). Mrs. Petty argues that her altercation with Mrs. Branchaud was "accidental" because her voluntary intoxication affected her ability to form the intent to injure Mrs. Branchaud.[2] She contends that, as a result, her intent is a disputed question of material fact, which cannot be resolved at the summary judgment stage.

■ To determine intent, a court may use an objective test "where the circumstances indicate the insured knew his act would damage the injured party." *State v. Glens Falls Ins. Co.*, 137 Vt. 313, 317, 404 A.2d 101 (1979). In equivocal circumstances, the court may rely on subjective testimony. *Id.* Based on the record before it, the Court finds that the circumstances conclusively indicate that Mrs. Petty intended to hit and to injure Mrs. Branchaud at the time of her actions.

In her deposition testimony, Mrs. Petty describes the circumstances of the incident in detail. She explains that her motivation for hitting Mrs. Branchaud was to protect herself. She remarks that she had "to take care of [her]self, [n]obody else was going to do it." To the extent that Mrs. Petty acted in self-defense, the Court notes that in Vermont actions taken in self-defense do not fall within policy coverage. *Espinet v. Horvath*, 157 Vt. 257, 261, 597 A.2d 307 (1991). Although such actions ultimately may be justified, they are nonetheless intended. *Id.*

Even if the Court were to find the circumstances at bar equivocal, Mrs. Petty does not indicate in her testimony or elsewhere that she did not "intend" to hit or to injure Mrs. Branchaud. For example, Mrs. Petty never makes statements to the effect that she wouldn't have struck Mrs. Branchaud if she had been thinking more clearly.[3] Hence, the instant matter is distinguishable from other

---

2. In support of this assertion, Mrs. Petty relies on the Vermont Supreme Court's holding that an insane person lacks the capacity to form the intent necessary to trigger intentional injury exclusionary clauses, as a matter of law. *See Cooperative Fire Insurance Ass'n v. Combs*, 162 Vt. 443, 648 A.2d 857, 860 (1994). Mrs. Petty argues that her voluntary intoxication makes her like an insane person. In *Combs*, the Vermont Supreme Court specifically declined to address whether other kinds of incompetency could affect an insured's ability to form the requisite intent. *Id.* at 858. Thus, Mrs. Petty's claim presents a matter of first impression. However, as discussed *infra*, the Court need not reach this issue.

3. Mrs. Petty asks this Court to follow *Hanover Insurance Co. v. Talhouni*, 413 Mass. 781, 604 N.E.2d 689 (1992), in concluding that voluntary intoxication may affect one's capacity to form the necessary intent. However, in *Talhouni*, the Massachusetts Supreme Court notes that, as a preliminary matter, there must be evidence showing that the insured's capacity to form the requisite intent is legitimately at issue. 413 Mass. at 788, 604 N.E.2d 689.

cases in which the Vermont Supreme Court has found equivocal circumstances and denied the insurer's summary judgment motion. *See, e.g., Espinet,* 157 Vt. at 257, 597 A.2d 307.

In *Espinet,* the insured, Mr. Horvath, shot Mr. Espinet in the head during the course of an argument and after the insured had been drinking. According to the insured's deposition testimony, he did not intend to hit Mr. Espinet but rather expected to fire a shot about a foot above his head to frighten him. *Id.* at 258–60, 597 A.2d 307. Based on the insured's subjective testimony, the court concluded that his intent was a genuinely triable issue of fact.

Because Mrs. Petty has not called into question her "intent" in this matter, the Court need not reach the issue of whether voluntary intoxication affects one's capacity to form the requisite intent for insurance coverage purposes.[4] Where, as here, the insured's own testimony shows that she intended to injure, and knew at the time of her actions that she was injuring another, the exclusionary clause shall apply.[5]

### III. Conclusion

For the foregoing reasons, it is hereby ORDERED that Nationwide's Motion for Summary Judgment is GRANTED.

---

4. The comments by Mrs. Branchaud and her daughter, submitted by Mrs. Petty, regarding Mrs. Petty's level of drunkenness are not relevant given that Mrs. Petty admits that she intended to hit and harm Mrs. Branchaud.

5. Although Nationwide alleged untimely notice in its complaint, it did not move for summary judgment on this basis. Therefore, the Court shall not address this issue.