## Cooperative Fire Insurance Association of Vermont v. Robert Bizon, James W. Ashcroft, Administrator of Estate of James R. Ashcroft, James W. and Marta Ashcroft

[693 A.2d 722]

No. 95-214

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed March 28, 1997

*Allan R. Keyes* and *Joseph H. Badgewick* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Plaintiff-Appellee.

*James A. Dumont, Marybeth McCaffrey,* and *Sandra M. Lee* and *Mary Kay Lanthier,* Law Clerks (On the Brief), of *Keiner & Dumont, P.C.*, Middlebury, for Defendants-Appellants.

**Dooley, J.** This appeal arises from a declaratory judgment action brought by plaintiff Cooperative Fire Insurance Association of Ver-

mont against its insured, Robert Bizon, to seek a determination that it did not have to defend or indemnify Bizon in a civil action over the shooting death of James R. Ashcroft on Bizon's property. Cooperative Fire subsequently added by motion James W. Ashcroft (hereinafter defendant), as administrator of James R. Ashcroft's estate and his parent.[1] James W. Ashcroft is plaintiff in the underlying tort action against Bizon. After a trial without jury, the trial court found that Cooperative Fire did not have the duty either to defend or indemnify Bizon against the underlying tort claim. Only defendant James W. Ashcroft has appealed. We affirm.

The facts are as follows. Bizon owns and manages a bar in the City of Rutland. For a period of time, he regularly stored liquor supplies in his garage at his North Clarendon home. As a result of several burglaries of the supplies, Bizon's son installed a motion monitor so that movement within the garage would turn on a radio in Bizon's bedroom. Bizon also installed flood lights to illuminate the garage area and kept a loaded .357 magnum handgun in the house to protect against burglars. At some time prior to March 17, 1991, Bizon stopped putting liquor in the storage building and placed a sign on the garage giving notice that all the liquor had been removed. He left the garage door unlocked and the flood lights unlit, but activated the motion alarm and kept the loaded handgun in the kitchen near the rear door.

In the early morning of March 17, 1991, the motion alarm awakened Bizon. He immediately rose from bed, armed himself with the loaded gun to confront the burglars he suspected were in the garage, and turned on the flood lights. He did not call the police. He placed himself near the rear of a parked Ford truck in front of the garage door and ordered those inside to come out.

As the first two persons came running out of the garage door, Bizon yelled to them to stop and fired a warning shot into the air. The two figures continued running away. A third person appeared; Bizon ordered him to stop, and then fired in the direction of the doorway. This third person, who was James R. Ashcroft, started to follow the first two individuals. Bizon shot twice at him. One of the bullets struck Ashcroft's right hip, severing major blood vessels in his legs. A fourth person then appeared at the door and surrendered, crawling towards Bizon on his hands and knees.

---

[1] Marta Ashcroft, the mother of James R. Ashcroft, was also joined as a party defendant, but she has subsequently died. James W. Ashcroft is also a party as administrator of her estate.

As Ashcroft lay on the ground bleeding to death, he said to Bizon, "I'm shot, you hit me." Bizon replied, "I shot you once and I'll shoot you again if you don't tell me who your buddies were." Then Bizon called to his girlfriend, watching from inside the house, to phone the police. The police arrived about eight minutes after the call and thirteen minutes after the shooting incident. Medical help arrived too late to save Ashcroft's life.

At the criminal trial, a Rutland County jury acquitted Bizon of involuntary manslaughter in the killing of Ashcroft. Meanwhile, Bizon filed for bankruptcy.

The lawyer for Ashcroft's family and estate notified Bizon that he would pursue a damage claim, and Bizon notified Cooperative Fire, which brought a declaratory judgment action in the Addison Superior Court to determine whether it was obligated to defend or indemnify Bizon. Shortly thereafter, the Ashcrofts brought a wrongful death action in Rutland Superior Court against Bizon, alleging three theories of negligence: (1) Bizon's recklessness or negligence led to the armed confrontation that resulted in the killing, (2) Bizon shot at Ashcroft in the negligent belief he had a right to self-defense, and (3) Bizon's negligent delay in obtaining medical aid for the injured youth caused an otherwise avoidable death.

Cooperative Fire joined the Ashcrofts in its declaratory judgment action seeking an injunction against pursuit of the Rutland liability suit while the coverage question was unresolved. Both the declaratory judgment and wrongful death actions were delayed by the inability to obtain discovery from Bizon while his criminal case was pending and later by Bizon's bankruptcy filing. The last barrier was removed when the bankruptcy court lifted its stay of the tort action to the extent of insurance coverage. Although Cooperative Fire did not obtain an injunction, its action went forward first.

At trial, plaintiff Cooperative Fire argued that the insurance policy contained exclusions from coverage claims for damages arising from the insured's intentional acts or from claims arising from the insured's business activities and that either or both of these exclusions applied to bar coverage of the Ashcrofts' civil suit. Defendant Ashcroft denied that either exclusion applied because (1) Bizon acted involuntarily to fend off what appeared to be an unexpected attack on himself and his home, and (2) no business supplies were stored in the garage at the time of the incident. Although Bizon did not actively participate in the trial, he supported plaintiff's position that the policy exclusions applied.

The trial court held that the business exclusion did not apply because Bizon was not using the garage for business purposes at the time of the incident. It held that the intentional acts exclusion applied because "Mr. Bizon deliberately fired the hand gun at Mr. Ashcroft several times for the purpose of hitting him with the bullet." The court concluded that Cooperative Fire did not have to defend or indemnify Bizon against the Ashcroft claim.

On appeal, defendant focuses exclusively on his claim that Bizon was negligent in shooting Ashcroft. He contends that the trial court erred in finding the intentional act exclusion applied without finding that Bizon had the subjective intent to harm Ashcroft. Plaintiff first challenges defendant's standing to appeal.[2] On the merits, plaintiff argues that the court's finding that Bizon intended to shoot Ashcroft was sufficient to invoke the intentional act exclusion, without a finding that Bizon intended to harm Ashcroft. Alternatively, plaintiff argues that coverage should be denied because the killing was not an "accident" as required for coverage under the policy.

We turn first to the issue of standing.[3] We note that this is a declaratory judgment action and in such an action "all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." 12 V.S.A. § 4721. We also note that Cooperative Fire made defendant a party, initially so that it could seek a restraining order against defendant's prosecution of the wrongful death suit, but thereafter defendant participated as the only party opposing plaintiff's claim. Further, we note that Bizon's bankruptcy action meant that the only method defendant had of collecting a judgment was from plaintiff, and that the Legislature has specifically authorized suits against insurance carriers to collect in such situations. See 8 V.S.A. § 4203(3).

We have no difficulty in holding that defendant has standing to appeal in these circumstances. Ordinarily, a party may appeal if the

---

[2]This argument was first raised by motion for summary affirmance. This Court denied the motion, but stated that plaintiff's argument that defendant lacked standing to appeal would be considered with the merits of the appeal.

[3]At oral argument Cooperative Fire waived the question of whether the Ashcrofts had standing to appeal the declaratory action. We nonetheless address this issue because standing is a jurisdictional issue which cannot be conferred by agreement of the opposing party. See *Sevigny v. Home Builders Ass'n of Maine, Inc.*, 429 A.2d 197, 200 (Me. 1981) (standing to appeal "cannot be conferred by agreement of the opposing party, any more than jurisdiction may be conferred upon a court by agreement").

party has some legal interest which may be, by the judgment appealed from, either enlarged or diminished. See *In re Estate of Walsh*, 133 Vt. 429, 430, 341 A.2d 706, 706 (1975); see also *In re M.C.*, 156 Vt. 642, 642, 590 A.2d 882, 882 (1991) (party must be "aggrieved" by decision in order to appeal). Generally, an intervenor, or third party, may appeal, by virtue of the party status, any issue on which the party is aggrieved. See *State v. Schaefer*, 157 Vt. 339, 344, 599 A.2d 337, 341 (1991), *cert. denied*, 502 U.S. 1077 (1992).

■ · The purpose of a declaratory judgment is "to declare rights, status and other legal relations whether or not further relief is or could be claimed." 12 V.S.A. § 4711. Thus, "[a] person interested under a . . . written contract . . . may have determined any question of construction . . . arising under the . . . contract . . . and obtain a declaration of rights, status or other legal relations thereunder." *Id.* § 4712. The Declaratory Judgment Act is a remedial statute that must be construed liberally to effectuate its purpose. See *Poulin v. Town of Danville*, 128 Vt. 161, 163, 260 A.2d 208, 209 (1969). The Act "opened . . . to plaintiffs at an early stage of the controversy a right to petition for relief not heretofore possessed." *Gifford Memorial Hosp. v. Town of Randolph*, 119 Vt. 66, 70, 118 A.2d 480, 483 (1955). A declaratory judgment will issue if it serves the useful purpose of clarifying the legal relations of the parties or terminating the insecurity and uncertainty of the controversy. See *Commercial Ins. Co. v. Papandrea*, 121 Vt. 386, 392, 159 A.2d 333, 337 (1960).

Although we have never definitively determined the role of the tort-plaintiff in a declaratory judgment action over liability insurance coverage, the standard practice has been to join tort-plaintiffs as parties. Indeed, we have considered numerous coverage disputes based on an appeal to this Court by the tort-plaintiff. See, e.g., *United States Fidelity & Guar. Co. v. Giroux*, 129 Vt. 155, 156-57, 274 A.2d 487, 488-89 (1971). The inclusion of the tort-plaintiff is desirable because "'from a pragmatic viewpoint . . . the most real dispute is between the injured third party and the insurance company, not between the injured and an oftentimes impecunious insured.'" *Federal Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 354 (3d Cir. 1986) (quoting 6A J. Moore et al., Moore's Federal Practice ¶ 57.19).

A declaratory judgment proceeding was needed here because the question of insurance coverage would not be resolved by the tort action, and plaintiff would be in the position of defending the tort action while asserting that Bizon's actions were intentional. See *Orleans Village v. Union Mut. Fire Ins. Co.*, 133 Vt. 217, 220, 335 A.2d

315, 317-18 (1975). Indeed, one of the main advantages of proceeding by declaratory judgment is that it resolves the critical question of whether any judgment obtained in the tort action will be collectible and makes it likely that the tort action will either be settled or dismissed. If defendant had not been a full party in the declaratory judgment action, however, he would not be bound by it. 12 V.S.A. § 4721. Thus, he could obtain a judgment against Bizon and relitigate the question of coverage pursuant to 8 V.S.A. § 4203(3).[4] Consistent with the remedial purpose of the Declaratory Judgment Act, the only efficient course of action was to join the tort-plaintiff in the declaratory judgment action and give him full-party status. Once he was joined as a party, his legal rights were determined by the declaratory judgment, and he could appeal because that judgment affected him adversely.

■ Second, we address plaintiff's position that Bizon's shooting of Ashcroft may be excluded from coverage under either of two policy clauses. At the time of Ashcroft's death, plaintiff insured Bizon under a homeowner's policy. The relevant passages are as follows:

DEFINITIONS

. . . .

11. *Occurrence* means an accident. This includes loss from repeated exposure to similar conditions.

. . . .

PRINCIPAL COVERAGES – LIABILITY AND MEDICAL PAYMENTS TO OTHERS
*Coverage L — Personal Liability* — We pay . . . all sums for which an *insured* is liable by law because of *bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies. We will defend a suit seeking damages if the suit resulted from *bodily injury* or *property damage* not excluded under this coverage.

. . . .

---

[4]Plaintiff would have us read the statute and policy as giving the insured exclusive control over the coverage question with the power to waive coverage or agree that there is no coverage under the policy language. In this case, this power would determine whether the insured is liable at all because under the bankruptcy order any liability is limited by the extent of insurance availability. Plaintiff's interpretation would effectively nullify the direct-action statute in the case of a bankrupt tort-defendant, and we reject it.

EXCLUSIONS THAT APPLY TO COVERAGES L AND M

This policy does not apply to liability which results directly or indirectly from:

. . . .

8. an intentional act of an *insured* or an act done at the direction of an *insured* . . . .

Plaintiff alleges that the shooting was an intentional act by Bizon and therefore was excluded from coverage. In the alternative, plaintiff contends that the policy does not cover Bizon's actions because they did not involve an accident. The trial court ruled that the intentional act exclusion applies. We agree and do not reach plaintiff's alternative ground for affirmance.

■■ An insurance policy must be interpreted according to its terms and the evident intent of the parties as expressed in the policy language. *Select Design, Ltd. v. Union Mut. Fire Ins. Co.*, 165 Vt. 69, 72, 674 A.2d 798, 800 (1996). Any ambiguity in an insurance contract must be construed in favor of the insured. *Garneau v. Curtis & Bedell, Inc.*, 158 Vt. 363, 367, 610 A.2d 132, 134 (1992). Policies should be interpreted to favor complete coverage. *Gerrish Corp. v. Universal Underwriters Ins. Co.*, 947 F.2d 1023, 1029-30 (2d Cir. 1991), *cert. denied*, 504 U.S. 973 (1992). As long as the trial court's construction of the contract is reasonable, we will sustain it. *C.D. v. N.M.*, 160 Vt. 495, 501, 631 A.2d 848, 852 (1993). Here, the court's construction is reasonable and well within the ambit of our case law. See *Espinet v. Horvath*, 157 Vt. 257, 259, 597 A.2d 307, 309 (1991) (insured must be taken to have intended injury where circumstances indicate he knew act would damage injured party); *Wendell v. Union Mut. Fire Ins. Co.*, 123 Vt. 294, 297, 187 A.2d 331, 332 (1963) ("In its customary usage, intentionally means an act done with intention of purpose, designed and voluntary.").

The trial court held that the exclusion applied if Bizon fired the gun at Ashcroft "with the intention of hitting him with the bullet," adding that it would make no difference that Bizon intended to wound but not kill Ashcroft. Because the court found Bizon fired at the fleeing Ashcroft for the purpose of hitting him with a bullet, it concluded that the exclusion applied.

Defendant argues that the phrase "intentional act of an insured" is ambiguous and, consistent with our rule that ambiguity should be resolved in favor of the insured, argues that the term should be

construed to require that Bizon have the subjective intent to cause injury. We stress that the wording of the policy makes the exclusion applicable when the "act," not the injury, is intentional. Moreover, defendant's distinction is unworkable in this context. A person who deliberately fires a gun at another knows that it will inflict injury although the shooter cannot necessarily predict the extent of that injury. In a conceptually similar context in *City of Burlington v. National Union Fire Ins. Co.*, 163 Vt. 124, 655 A.2d 719 (1994), we rejected a rule that would require coverage unless the court found that the insured intended the injury that resulted from the wrongful act. In *National Union*, the insured city sought coverage for a suit filed against it arising out of its termination of a contract to buy wood chips for its electric plant, and argued that the injury to the wood chip suppliers was not intended. We held there was no coverage:

> Burlington intended or expected economic injury to the wood chip suppliers when it reduced its purchases from them.
>
> The distinction Burlington draws is unworkable and would result in a duty to defend in virtually any commercial contractual dispute. No doubt Burlington took the actions it did because of its economic interests in the electricity generation business. There is no reason that it, or more properly its managers, would have precise knowledge of the amount or nature of the damage it might inflict on others as a consequence of its business actions.

*Id.* at 129, 655 A.2d at 722. Under any common-sense definition, Bizon intended harm when he deliberately shot at Ashcroft. See *Nationwide Mut. Fire Ins. Co. v. Lajoie*, 163 Vt. 619, 620, 661 A.2d 85, 85 (1995) (sexual abuse of minor involves intent to injure as matter of law).

We have addressed defendant's argument in the past as an evidentiary matter. Thus, we have allowed evidence of subjective intent in some cases, but only if the circumstances are "equivocal." See, e.g., *State v. Glens Falls Ins. Co.*, 137 Vt. 313, 317, 404 A.2d 101, 104 (1979). These holdings necessarily mean where the circumstances are not equivocal, subjective intent is irrelevant. The circumstances are not equivocal here.

This result is not changed even if Bizon were found to have acted in self-defense.[5] As we held in *Espinet*, 157 Vt. at 261, 597 A.2d at 310, another case involving an intentional act policy exclusion:

> Though justified, an injury inflicted by an act taken in self-defense may be expected and/or intended. To accept defendant's theory that injuries inflicted in the course of self-defense are included in coverage, we would be forced to read into the policy that only injuries inflicted wrongfully are excluded. We may not read such a requirement into the contract.

We agree with the Supreme Court of Florida, which recognized:

> The intent underlying an act of self-defense where the defender intends to harm the attacker is identical to that underlying an assault. In each, the actor intends to inflict harm on the other. . . . The difference between the two lies in the motive or purpose governing the act; the motive for one is worthy, that for the other is not. Nevertheless, such acts of self-defense are undeniably intentional and have been held to be embraced within intentional act exclusions by a majority of courts.

*State Farm Fire & Casualty Co. v. Marshall*, 554 So. 2d 504, 505 (Fla. 1989) (citation omitted); see also *Century Mut. Ins. Co. v. Paddock*, 425 N.W.2d 214, 217 (Mich. Ct. App. 1988) (insurer not obligated to pay damages for liability of insureds who allegedly kicked victims out of self-defense). Bizon could have acted both intentionally and in self-defense. His motive in shooting at Ashcroft is not determinative of insurance coverage.

Nor do we find particular significance in the precise language used in the policy. In *Espinet*, the policy excluded bodily injury that was "expected or intended by an insured," 157 Vt. at 259, 597 A.2d at 308, and defendant stresses the breadth of that exclusionary language. We can conceive of circumstances that are expected, but not intended. Based on the court's findings, such circumstances were not present here.

Nor do we believe that the fact that defendant phrased his tort claim in terms of negligence is determinative. The wording was clearly chosen to produce insurance coverage. See *Lajoie*, 163 Vt. at

---

[5] We address this argument although the court's factual findings appear to be inconsistent with it. The court found that Bizon shot at the "fleeing" Ashcroft.

620, 661 A.2d at 86 (drafting of complaint to state intentional torts in terms of negligence is disingenuous attempt to create duty on insurer to defend). In the absence of this declaratory judgment to determine the true facts, the complaint drafting may have been sufficient to obligate plaintiff to defend the tort action. See *National Union*, 163 Vt. at 127, 655 A.2d at 721 (duty to defend is normally determined by comparing allegations in complaint to terms of coverage in insurance policy; if any claims are "potentially covered," there is duty to defend). In this proceeding, we must look at the obligation to defend and indemnify in terms of the facts found by the trial court, and those facts show that the exclusion applies.

Finally, we do not believe that our holding in *Cooperative Fire Ins. Ass'n v. Combs*, 162 Vt. 443, 648 A.2d 857 (1994), the principal case relied upon by defendant, changes the result. *Combs* held that as a matter of law an insane person is not capable of forming an intent to cause harm, *id.* at 448, 648 A.2d at 860, so an intentional act exclusion cannot apply to the act of an insane person. We did not hold that the intent required to exclude coverage must be wrongful. Nor did we hold that subjective intent to injure, or to injure in a particular way, was required to invoke the exclusion. Instead we noted that mental illness may impair a person's will and emotions so that he cannot control his actions even though he understands their consequences and is therefore deprived of the normal check against harmful conduct. *Id.* at 447, 648 A.2d at 859. Thus, we viewed "intent" as a more complex concept than that sought by the insurance carrier and as not including harmful acts committed while insane. *Id.* at 447-48, 648 A.2d at 860. There is no indication that Bizon was insane at the time of the shooting. In the absence of some evidence of impaired mental capacity or functioning, *Combs* is not relevant to this case.

We find no clear error was committed by the trial court in ruling that Cooperative Fire has no duty to defend or indemnify Bizon in the wrongful death suit brought by defendant.

*Affirmed.*