Liberty Ins. Grp. v. Ellis, No. 259-7-11 Bncv (Hayes, J., Apr. 2, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## VERMONT SUPERIOR COURT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| Bennington Unit | Docket No. 259-7-11 Bncv |

Liberty Insurance Group
  Plaintiff

  v.

Kiah Ellis and
Thomas J. Crowe
  Defendants

### DECISION ON MOTION FOR SUMMARY JUDGMENT

This case arises out of an incident that occurred during the early hours of March 19, 2010, at the Stratton Mountain Resort in Stratton, Vermont. On that day, Stratton was in the middle of hosting the weeklong U.S. Open Snowboarding Championships. Shortly before 2 :00 a.m., Sergeant Thomas J. Crowe of the Winhall Police Department received a call about a disturbance at the mountain. Sergeant Crowe was informed that officers with CENSOR Security – a private firm hired for the snowboarding competition – had come across an intoxicated and unruly young man, and required assistance from local law enforcement. That young man was Kiah Ellis, who was at Stratton for the week to attend the competition.

Ellis had been consuming alcohol throughout the day prior to his encounter with CENSOR security. Beginning at approximately 5:00 p.m., Ellis drank one or two beers with some friends, and then around 7:00 p.m. shared a 1.75-liter bottle of Jack Daniels whiskey with approximately thirteen others. Around 9:00 p.m., Ellis attended an art show in the Stratton Mountain Village, where he continued to drink beer. By 1:40 a.m., Ellis and several others had moved to the parking lot at Stratton mountain, where Ellis began jumping and dancing on top of a vehicle, attracting the attention of CENSOR security officers. At the time of the incident, Ellis was nineteen years old.

When Sergeant Crowe arrived on the scene, he and other officers subdued and handcuffed Ellis, and placed him on the ground. Some moments later, Ellis thrust his head forward into Sergeant Crowe's head, causing Sergeant Crowe injury. Following this, other officers on the scene restrained Ellis and placed him in the back of a squad car. Then, the officers turned their attention to several other youths. While the officers' attention was elsewhere, Ellis slipped his handcuffs under his feet, so that his hands were in front of his body; he then proceeded to escape from the squad car, and flee from police. Officers later caught up to Ellis and once again placed him in custody.

These events gave rise to three lawsuits that have been filed in this court. The first is *Crowe v. Ellis*, 512-12-10 Bncv. In that case, Sergeant Crowe is suing Ellis for assault and battery and intentional infliction of emotional distress, and, in the alternative, negligence.[1] The second is *Crowe v. The Burton Corporation et al.*, 286-8-11 Bncv. In that case, Sergeant Crowe is suing The Burton Corporation, which sponsored the snowboarding competition at Stratton, and The Stratton Corporation, which owns the resort, for violations of the Dram Shop Act, 7 V.S.A. § 501 *et seq*. Sergeant Crowe alleges that Burton and Stratton furnished Ellis with alcoholic beverages in violation of the Dram Shop Act, and that Ellis's subsequent intoxication led to the harm inflicted on Sergeant Crowe. The third and final case is the instant case – a declaratory judgment action filed by Liberty Insurance Group. Liberty acknowledges that Ellis is insured by one of its homeowner's policies, and that the policy covers bodily injury or property damages caused by the insured. However, Liberty seeks a declaration that Ellis's actions fall outside the scope of coverage, because they qualify as intentional or expected acts excluded by the policy.

---

[1] Originally, the complaint in *Crowe v. Ellis* made claims for assault and battery and intentional infliction of emotional distress only. On November 10, 2011, Sergeant Crowe amended his complaint to add a negligence claim in the alternative, should the facts show that due to the effects of intoxication, Ellis was unable to form the requisite intent to sustain the first two counts.

Liberty filed the instant motion for summary judgment on February 21, 2012. Ellis filed a response on March 19, 2012. Liberty filed a reply on March 27, 2012. Sergeant Crowe has not responded to the motion.

STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . referred to in the statements required by Rule 56(c)(2), show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3). The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citation omitted). The moving party "has the burden of proof, and the opposing party must be given the benefit of all reasonable doubts and inferences in determining whether a genuine issue of material fact exists." *Price v. Leland*, 149 Vt. 518, 521 (1988). Summary judgment is appropriate "where, after an adequate time for discovery, a party 'fails to make a showing sufficient to establish the existence of an element' essential to his case and on which he has the burden of proof at trial." *Poplaski v. Lamphere*, 152 Vt. 251, 254-55 (1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The court derives the undisputed facts from the parties' statements of fact under V.R.C.P. 56(c)(2). Facts in the moving party's statement are deemed undisputed when supported by the record and not controverted by facts in the nonmoving party's statement which are also supported by evidence in the record. See *Boulton v. CLD Consulting Engineers, Inc.*, 2003 VT 72, ¶ 29, 175 Vt. 413 (citing *Richart v. Jackson*, 171 Vt. 94, 97 (2000)).

DISCUSSION

It is undisputed that Ellis is insured by his mother's Liberty Mutual homeowner's insurance policy, since he is the policy holder's son, and was living in her household at the time of the incident. The policy states that "[i]f a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' or 'property damages' caused by an 'occurrence' to which this coverage applies," Liberty will defend against the suit, and pay up to the policy limits if the insured is liable. The policy also contains an exclusion stating that the aforementioned coverage "does not apply to 'bodily injury' or 'property damage' which is expected or intended by the 'insured.'" Liberty argues that Ellis's actions on March 19, 2010 against Sergeant Crowe were intentional, or at least done with knowledge that they would result in harm.

Generally speaking, an insurer has the burden to prove that a policy exclusion operates to bar coverage in a particular case. See *Jacobs v. Loyal Protective Ins. Co.*, 97 Vt. 516, 522 (1924) ("[W]here an accident company seeks to avoid liability because of a specific exception to its general liability under the policy . . . the burden of proof rests upon the company to show that the facts bring the case within the exception."). Exclusionary clauses will be construed narrowly against the insurer "to serve the strong public interest of providing compensation for victims." *Cooperative Fire Ins. Ass'n v. Combs*, 162 Vt. 443, 445 (1994) (citation omitted).

Confronting an insurance policy that excepted intentional conduct, the Vermont Supreme Court explained the concept of intent as follows:

> A wilful or intentional injury implies positive and aggressive conduct, and not the mere negligent omission of duty. 'Wilful' means 'intentional' and is used in contradistinction to 'accidental' or 'unavoidable.' A wilful act implies an intention to cause injury. In its customary usage, intentionally means an act done with intention of purpose, designed

and voluntary.

*Wendell v. Union Mutual Fire Ins. Co.*, 123 Vt. 294, 297 (1963).  In contrast, the Vermont

Supreme Court has defined "accident" as an "unexpected happening without intention and

design."  *Commercial Union Ins. Co. v. City of Montpelier*, 134 Vt. 184 (1976) (interpreting a

policy in which only "accidents" qualified as occurrences).

To prevail on its motion, Liberty must prove that no genuine issue of material fact exists

as to whether Ellis acted intentionally when he thrust his head forward, causing injury to

Sergeant Crowe.  In his response to Liberty's first set of interrogatories, countersigned by

counsel, Ellis described his conduct as follows: "When Officer Crowe picked me up and yelled in

my face, I responded by head-butting him."  When asked about the incident in a deposition,

Ellis described being apprehended by police, and stated: "[T]hey threw me on the ground and

started kicking the shit out of me."  When asked specifically about his encounter with Sergeant

Crowe, Ellis responded: "Sergeant Crowe picks me up and starts screaming at me, and he's like

'You think you can run from us,' like bla bla bla, you know, yelling at me.  And then, just being

drunk, just headbutted him, and he fell back."[2]  Later in the same deposition, when asked

whether he was angry at Sergeant Crowe and the other officers just prior to the incident, Ellis

responded: "I don't think it was really at that stage of anger.  I think it was just more at the

stage of, like, dude, you guys just beat me up and now you're yelling in my face, and I think I

---

[2] Sergeant Crowe and Ellis tell different version of the events immediately preceding the attack.  According to Sergeant Crowe, Ellis was sitting and pretending to be passed out, presumably to draw Crowe in closer to attempt to revive him; Ellis then opened his eyes and thrust his head into Crowe's.  According to Ellis, he was standing, never pretended to pass out, and decided to "head butt" Sergeant Crowe after what he perceived to be aggressive behavior from the officers on scene.

was just -- it was just a stupid decision." When asked about his use of the word "decision," Ellis stated: "If you believe in free will, I guess sure, I made the decision to hit him."

It is true that Ellis acknowledges being intoxicated at the time of the incident, and the testimony of other witnesses supports the contention that Ellis had been drinking and appeared to be intoxicated; in an arrest report, Sergeant Crowe recounted that Ellis appeared intoxicated, smelled strongly of alcohol, and slurred his speech. Nevertheless, throughout the course of this litigation, Ellis has characterized the moments leading up to striking Sergeant Crowe as a deliberative process. Ellis describes responding to what he perceived to be aggression by Sergeant Crowe and other officers by deciding to lunge forward and strike Sergeant Crowe in the face. At no point prior to the filing of the instant motion does Ellis claim not to remember the incident, to have acted accidentally, to have acted out of impulse, or otherwise to have acted without intent.[3]

Throughout the course of this litigation, the only point at which Ellis claims not to have acted intentionally is in an affidavit accompanying his opposition to the instant motion. In the affidavit, Ellis asserts: "I instinctively reacted by 'head butting him,' by moving my forehead against his face. I do not know why I so struck Officer Crowe." These statements directly contradict Ellis's previous statements in his response to interrogatories and in his deposition.

Conclusory allegations that surface for the first time at the summary judgment stage, such as those in Ellis's affidavit, cannot serve to defeat a motion for summary judgment:

---

[3] Indeed, Ellis describes the incident in great detail in his deposition, and even recounts his thought process. He clearly articulates what happened the moment that he struck Sergeant Crowe, and the sequence of events that preceded and followed the incident. When Ellis was asked his brief escape from police custody while officers were otherwise occupied, he detailed maneuvering his handcuffs to the front of his body, then "looking at the police officer to make sure they're not looking at me." Later, he stated: "I would have gotten away, too, if it wasn't for that light," referring to the cabin light in the cruiser that came on when he opened the door.

"When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assocs. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984) (cited with approval by *Traveler's Insurance Co. v. Demarle Inc., USA*, 2005 VT 53, ¶ 9, 178 Vt. 570).

In his opposition to the instant motion, Ellis argues that the mere fact that he was intoxicated at the time of the incident serves to prevent the court from granting summary judgment. This argument is unavailing. Where the circumstances conclusively indicate that an act was intentional, a conclusory allegation that intoxication somehow affected the ability to form intent will not defeat a motion for summary judgment. See *State v. Glens Falls Ins. Co.*, 137 Vt. 313, 317 (1979) ("[W]here the circumstances indicate the insured knew his act would damage the injured party he must be taken to have intended it despite subjective testimony to the contrary."). Based on the objective and uncontroverted evidence in the record prior the filing of this motion, the court concludes that Ellis intended to strike and injure Sergeant Ellis.

This case is quite similar to one confronted in 1996 by the United States District Court for the District of Vermont. In that case, an insurance company sought a declaration that it was not obligated to provide coverage for a woman who engaged in a drunken physical altercation with another customer at a bar. *Nationwide Mut. Fire Ins. Co. v. Petty*, 923 F.Supp 63 (D. Vt. 1996). Although the insured claimed to be acting in self-defense, she did not claim at any time throughout the discovery process that her ability to form intent had been compromised by her intoxication. *Id.* at 66-67. Applying Vermont law, the court found that all of the objective evidence, and the statements of the insured, supported the conclusion that the insured acted

intentionally. *Id*. at 66. In that case, as in this one, the insured did not appear to contest the voluntariness of her actions until the insurer filed a motion for summary judgment. *Id.*

Because the evidence in the record prior to the filing of the instant motion clearly demonstrates that Ellis intended his actions when he struck Sergeant Crowe, Liberty's motion must be granted. Ellis's attempt to create material issues of disputed fact at the summary judgment stage is unavailing, as his conclusory allegations stand in direct contravention of previous statements made in answers to interrogatories and at his deposition.

ORDER

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (MPR #7), filed February 21, 2012, is **granted**.

Dated at Bennington, Vermont this 2nd day of April, 2012.

_____
Katherine A. Hayes
Superior Court Judge