**City of Burlington v. National Union Fire Insurance Company**

[655 A.2d 719]

No. 94-381

Present: **Gibson, Dooley, Morse and Johnson, JJ., and Peck, J. (Ret.), Specially Assigned**

Opinion Filed December 30, 1994

*John L. Franco* of *McNeil, Leddy & Sheahan*, Burlington, for Plaintiff-Appellant.

*Aaron Eaton* and *Joseph H. Badgewick* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendant-Appellee.

**Dooley, J.** This appeal concerns whether National Union Fire Insurance Co. (NUFI) owes its insured, City of Burlington, reimbursement for Burlington's expenses in investigating, defending and settling a suit initiated against it in the Caledonia Superior Court, entitled *Moffatt v. City of Burlington*. Because NUFI declined to defend, Burlington provided its own defense and eventually settled the *Moffatt* case before trial. Burlington then brought a declaratory judgment action seeking a determination that NUFI breached its duty to defend under the policies it issued to Burlington, and,

consequently, that NUFI must indemnify Burlington for its defense and settlement costs. The trial court granted NUFI's motion for summary judgment, and Burlington appeals. Because the claims alleged in the *Moffatt* complaint are not possibly covered by Burlington's policy with NUFI, we affirm.

The issue on appeal is whether the allegations in the *Moffatt* complaint, sounding in breach of contract and related torts, triggered NUFI's duty to defend Burlington under the provisions of the occurrence-based liability insurance policies that NUFI issued to Burlington. The *Moffatt* suit contained five counts against the City of Burlington. All of the counts arose out of the operation of an electric generation plant owned by the Burlington Electric Department. The plant was fueled by wood chips supplied by plaintiffs, and plaintiffs alleged that Burlington refused to purchase the volume of wood chips called for in their contract. Count I alleged that Burlington breached its contract with plaintiffs. Count II alleged that Burlington knew its refusal to accept the quantity of wood chips contracted for was causing the plaintiffs devastating financial hardship, and had the character of a willful and wanton or fraudulent tort of insult and oppression. Count III alleged breach of duty of good faith and fair dealing under the wood chip contract. Count IV alleged economic duress in the administration of the wood chip contract, and Count V alleged deceit, claiming that Burlington failed to disclose correct information and misrepresented material facts. The plaintiffs claimed bodily injuries including severe emotional distress, as well as economic losses, and asked for an award of direct, consequential, and punitive damages.

Burlington's liability insurance policies provided in relevant part that NUFI:

> will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> A. bodily injury or
>
> B. property damage
>
> to which this insurance applies, *caused by an occurrence,* and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent . . . .

(Emphasis added.) Coverage is triggered by an "occurrence," defined in the policies as "an accident, including continuous or repeated

exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." On NUFI's motion for summary judgment, the trial court concluded that all five of the *Moffatt* counts were variations on a claim of breach of contract, and were in no way covered under Burlington's policy with NUFI.

The requirements for summary judgment are familiar. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, after giving the benefit of all reasonable doubts and inferences to the nonmoving party. See *State v. Delaney*, 157 Vt. 247, 252, 598 A.2d 138, 141 (1991); V.R.C.P. 56(c). The standard on review by this Court is the same as the standard to be applied by the trial court in ruling on the motion. See *Cavanaugh v. Abbott Laboratories*, 145 Vt. 516, 520, 496 A.2d 154, 157 (1985). In this case, there is no factual dispute about the language of the complaint or of the policies; rather, the parties dispute whether coverage under the NUFI policy extends to the *Moffatt* suit. The issue, therefore, is solely one of law.

We have often explained that an insurer's duty to defend is broader than its duty to indemnify. See *Garneau v. Curtis & Bedell, Inc.*, 158 Vt. 363, 366, 610 A.2d 132, 134 (1992). Generally, the insurer's duty to defend is determined by comparing the allegations in the complaint of the underlying suit to the terms of coverage in the policy. See *Cooperative Fire Ins. Ass'n v. Gray*, 157 Vt. 380, 382, 599 A.2d 360, 361 (1991); *Commercial Union Ins. Co. v. City of Montpelier*, 134 Vt. 184, 185, 353 A.2d 344, 345 (1976). If any claims are potentially covered by the policy, the insurer has a duty to defend. See *Garneau*, 158 Vt. at 366, 610 A.2d at 134. Conversely, where there is no possibility that the insurer might be obligated to indemnify, there is no duty to defend. *Id.*

The specific issue in this case is whether any of the five counts contained in the *Moffatt* complaint alleges an "occurrence," as that term is defined in the NUFI policy. The resolution of this issue in turn depends on whether any of the counts show the presence of an "accident," an essential component of an "occurrence" under the NUFI policy.

An insurance policy must be construed according to its terms and the evident intent of the parties as expressed in the policy language. *Sanders v. St. Paul Mercury Ins. Co.*, 148 Vt. 496, 500, 536 A.2d 914, 916 (1987). Disputed terms should be read according to their plain,

ordinary and popular meaning. See *American Protection Ins. Co. v. McMahan*, 151 Vt. 520, 522, 562 A.2d 462, 464 (1989). Using these principles, we have defined "accident" as an "'unexpected happening without intention and design.'" *Commercial Union Ins. Co.*, 134 Vt. at 186, 353 A.2d at 346 (quoting *Anton v. Fidelity & Casualty Co.*, 117 Vt. 300, 305, 91 A.2d 697, 700 (1952)).

There is no question that Burlington acted intentionally in refusing to accept wood chip deliveries. Despite its intentional act, it argues that the *Moffatt* complaint alleged an accident because Burlington neither expected nor intended the resulting harm. In making this argument, it relies upon *Village of Morrisville Water & Light Dep't v. United States Fidelity & Guar. Co.*, 775 F. Supp. 718, 729-30 (D. Vt. 1991), where the court reasoned that the unexpected nature of an accident describes the harm which is caused rather than the act involved. The case involved insurance coverage for a Vermont utility claimed by the Federal Environmental Protection Agency (EPA) to be responsible in part for the clean-up of a Missouri disposal site to which it had sent PCBs. Although the site had been EPA approved for PCB disposal, its owner failed to deal with them properly and left the site contaminated with PCBs. The federal court found that liability based on the utility's disposal of the PCBs was an "occurrence" which triggered coverage because it was an "accident" as required by the policy. *Id.* Thus, an intentional act can be an "occurrence" if the resulting harm "was not expected or intended by the insured." *Id.* at 730.

The *Village of Morrisville* case drew its distinction from decisions of this Court where we found that an accident was present despite the intentional nature of the insured's conduct. We have found an accident where the insured shot into a house and injured an unseen person in another room when the bullet traveled through the wall. See *Otterman v. Union Mutual Fire Ins. Co.*, 130 Vt. 636, 642, 298 A.2d 547, 551 (1972). We concluded that the insured had neither intended nor expected to hit the injured person. *Id.*; see also *Espinet v. Horvath*, 157 Vt. 257, 260-61, 597 A.2d 307, 309-10 (1991) (injury not expected or intended when insured intended to shoot over injured party's head but mistakenly hit him).

We also found an "occurrence" where a sheriff mistakenly seized the wrong property in levying a writ of execution. See *State v. Glens*

*Falls Ins. Co.*, 137 Vt. 313, 317-18, 404 A.2d 101, 103-04 (1979).* We held the damage to the business from which the property was taken was neither intended nor expected.

■ These cases are distinguishable because in each the insured intended no injury to the party who brought the claim(s) for which coverage was sought. Here, it cannot be said that Burlington intended no injury to the plaintiffs in *Moffatt*. Burlington intended or expected economic injury to the wood chip suppliers when it reduced its purchases from them.

■ The distinction Burlington draws is unworkable and would result in a duty to defend in virtually any commercial contractual dispute. No doubt Burlington took the actions it did because of its economic interests in the electricity generation business. There is no reason that it, or more properly its managers, would have precise knowledge of the amount or nature of the damage it might inflict on others as a consequence of its business actions. To determine whether there is a duty to defend based on such knowledge is arbitrary, far afield from any common-sense definition of accident.

The trial court's decision relies heavily on the fact that despite the tort claims in the *Moffatt* complaint, the underlying dispute is really based on breach of a commercial contract. In the trial court's view, a breach of contract could not be considered an accident or occurrence. Other jurisdictions have held that a breach of contract does not constitute an occurrence under liability policies that require an accident for an occurrence. See *Jakobson Shipyard, Inc. v. Aetna Casualty & Sur. Co.*, 961 F.2d 387, 389 (2d Cir. 1992) (no accident where insured shipbuilder provided tug boat with defective steering mechanism contrary to contract specifications); *Pace Constr. Co. v. United States Fidelity & Guar. Ins. Co.*, 934 F.2d 177, 180 (8th Cir. 1991) (no accident where insured subcontractor breached contractual duty to procure insurance for contractor); *Magic Valley Potato Shippers v. Continental Ins.*, 739 P.2d 372, 375-76 (Idaho 1987) (no accident where buyer failed to pay for and pick up goods in violation of existing contract).

---

\* The *Glens Falls* decision cast the question somewhat differently, stating that it was undisputed that there had been an "accident" but it was disputed whether the accident was expected or intended. *Glens Falls Ins. Co.*, 137 Vt. at 317, 404 A.2d at 103-04. We think the lack of intent or expectation inheres in the definition of accident.

██ ██ The characterization of the claims as sounding in tort or contract is not necessarily determinative of whether insurance coverage is available under insurance contract language that does not rely on such a distinction. See *Garneau*, 158 Vt. at 368, 610 A.2d at 134-35. The distinction is relevant, however, to highlight the mismatch between the kind of coverage claim Burlington is asserting and the purpose of the general liability policy from which it seeks coverage. As one court explained in denying coverage for a breach of contract claim on a comprehensive liability policy:

> To allow indemnification under the facts presented here would have the effect of making the insurer a sort of silent business partner subject to great risk in the economic venture without any prospects of sharing in the economic benefit. The expansion of the scope of the insurer's liability would be enormous without corresponding compensation. There is simply no reason to expect that such a liability would be covered under a comprehensive liability policy which has, as its genesis, the purpose of protecting an individual or entity from liability for essentially accidental injury to another individual, or property damage to another's possessions, even if, perhaps, the coverage of the policy has been expanded to cover other non-bodily injuries that sound in tort.

*Toombs NJ Inc. v. Aetna Casualty & Sur. Co.*, 591 A.2d 304, 306 (Pa. Super. Ct. 1991). Similarly, we would distort the purpose of the liability insurance policy in this case by applying it to commercial litigation arising out of Burlington's breach of a contract to purchase a specified quantity of wood chips.

In view of our disposition, we need not address the other arguments raised by Burlington.

*Affirmed.*