751 A.2d 284 (2000)
CITY OF BURLINGTON
v.
ASSOCIATION OF GAS AND ELECTRIC INSURANCE SERVICES, LTD.
No. 98-049.
Supreme Court of Vermont.
February 25, 2000.
*285 John L. Franco, Jr., Burlington, and John T. Leddy of McNeil, Leddy & Sheahan, P.C., Burlington, for Plaintiff-Appellee.
Joseph E. Frank of Paul, Frank & Collins, Inc., Burlington, for Defendant-Appellant.
Present AMESTOY, C.J., MORSE, JOHNSON and SKOGLUND, JJ., and CASHMAN, District Judge, Specially Assigned.
SKOGLUND, J.
For the third time, we are asked to decide the extent of insurance coverage, if any, available to appellee City of Burlington concerning its settlement of a suit claiming that the City wrongfully refused to accept wood chip deliveries as provided in a contract between the City and the owners of a wood products business, the Moffatts. In the first case, we determined that the City's primary liability policy with National Union Fire Insurance Co. (NUFI) did not require the insurer to defend and indemnify the City in response to the Moffatt suit. See City of Burlington v. National Union Fire Ins. Co., 163 Vt. 124, 126, 655 A.2d 719, 720 (1994) (hereafter NUFI). In the second case, we concluded that the insuring agreement *286 contained in the City's excess liability policy with appellant Associated Electric & Gas Insurance Services, Ltd. (AEGIS) covered the claims raised in the underlying suit, but remanded the matter for the superior court to determine the applicability of policy exclusions not previously considered. See City of Burlington v. Associated Elec. & Gas Ins. Servs., 164 Vt. 218, 222-23, 669 A.2d 1181, 1184 (1995) (hereafter AEGIS). Both AEGIS and the City now appeal the superior court's summary judgment ruling on remand that the excess insurer must indemnify the City for defending and settling the underlying claims for bodily injury. We affirm.
The material facts are undisputed. The City sought indemnification from NUFI and AEGIS in separate declaratory judgment actions after defending against and eventually settling a lawsuit, entitled Moffatt v. City of Burlington, in which the plaintiffs claimed that the City's failure to fulfill its contractual obligations to purchase a specified volume of wood chips for its electric generating plant caused them economic losses and bodily injuries, including emotional distress. In each case, the superior court awarded summary judgment to the insurer.
In NUFI, we affirmed the superior court's judgment that the Moffatt allegations, sounding in breach of contract and related torts, were not covered by NUFI's liability policy, which provided coverage for an "occurrence"defined as "an accident" resulting "in bodily injury or property damage neither expected nor intended from the standpoint of the insured." 163 Vt. at 126-27, 655 A.2d at 720. In so ruling, we noted that an "accident" is an unexpected happening, and that the City had acted intentionally in refusing the wood chip deliveries. See id. at 128, 655 A.2d at 721. Further, we distinguished cases cited by the City in which the unintended harm constituted the "occurrence," noting that the City "intended or expected economic injury to the wood chip suppliers when it reduced its purchases from them." Id. at 128-29, 655 A.2d at 721-22. We stated that basing coverage on the City's lack of "precise knowledge of the amount or nature of the damage it might inflict on others as a consequence of its business actions" would take us "far afield from any common-sense definition of accident." Id. at 129, 655 A.2d at 722.
In AEGIS, however, we reversed the superior court's summary judgment ruling in favor of the excess insurer. We relied on the particular language of the policy's insuring agreement, which defined "occurrence" as an "accident" or "event" resulting "in bodily injury, personal injury or property damage." AEGIS, 164 Vt. at 221, 669 A.2d at 1183. Noting that the commonly understood meaning of the term "event" is not limited to accidental or unintended actions, we concluded that the term covered the claims raised in Moffatt, thereby requiring AEGIS to indemnify the City. See id. at 222, 669 A.2d at 1184. We further stated that our conclusion was reinforced by the fact that the AEGIS definition of "occurrence" did not include the standard modifying phrase "neither expected nor intended" contained in the NUFI policy's definition of "occurrence." See id. at 222-23, 669 A.2d at 1184. Nevertheless, because AEGIS also relied on policy exclusions that "should first be construed and applied by the trial court," id. at 223, 669 A.2d at 1184, our opinion did not resolve the issue. We remanded the matter to the trial court to consider the policy exclusions when determining whether AEGIS was required to indemnify the City.
The exclusion examined on remand provides that coverage does not apply "to liability of any INSURED for BODILY INJURY, PERSONAL INJURY or PROPERTY DAMAGE caused intentionally by or at the direction of such insured." After rejecting AEGIS's arguments that our conclusions in NUFI compelled summary judgment in its favor, the superior court ruled that the exclusion denied coverage for intentional *287 injuries, but not necessarily for intentional harms, and therefore the City's actions that led to the underlying suit were not excluded from coverage. The court determined that AEGIS was responsible for covering the City's liability and costs associated with the underlying claims for bodily injury, but not for property damage, because the latter claims were actually seeking compensation for uncovered economic losses. Accordingly, the court granted partial summary judgment in favor of AEGIS and partial summary judgment in favor of the City.
Both parties appeal. AEGIS argues that the superior court erred in concluding that (1) neither the doctrine of stare decisis nor the doctrine of issue preclusion dictated granting summary judgment in favor of AEGIS; (2) the AEGIS exclusion did not apply; (3) AEGIS's refusal to defend against the Moffatt suit estopped it from challenging the justiciability of the underlying claims for emotional distress; and (4) the City was entitled to prejudgment interest on defense costs not associated exclusively with the Moffatts' economic loss claims. In addition to opposing these arguments, the City contends in its cross-appeal that the superior court erred in denying coverage for property damage, and in failing to award the City full reimbursement for its costs in defending against the Moffatt suit.
We apply the same standard as that applied by the trial court in reviewing arguments challenging the grant or denial of summary judgment: "Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, after giving the benefit of all reasonable doubts and inferences to the nonmoving party." NUFI, 163 Vt. at 127, 655 A.2d at 721. As was the case in the two previous appeals concerning this matter, the parties do not dispute the material facts; thus, the issues concern solely questions of law.

I.
AEGIS first argues that under the doctrines of issue preclusion and stare decisis NUFI is controlling precedent on the ultimate issue of whether the City intended the harm resulting from its breach of contract. In AEGIS's view, NUFI concluded that because the City intended some harm, all resulting harm must be deemed intentional, regardless of its nature or scope. Thus, AEGIS takes the position that NUFI compelled the superior court on remand to conclude that the AEGIS exclusion denied coverage for all of the resulting harm caused by the City's decision to limit the Moffatts' wood chip deliveries.
We find no merit to this argument. NUFI construed a different provision contained in a different policy. In NUFI, this Court was concerned with whether the City's breach of contract was an "accident," which we had defined in previous case law as an unexpected happening occurring without intention or design. See 163 Vt. at 128, 655 A.2d at 721. We stated that without question the City acted intentionally in refusing the wood chip deliveries. See id. We also stated, in response to the cases cited by the City holding that an intentional act may be an "occurrence" if the resulting harm was unintended, that the City intended or expected the Moffatts to incur economic injury from its decision to limit deliveries, even if it was not aware of the precise nature or amount of the damages. Id. at 128-29, 655 A.2d at 721-22. We concluded that compelling NUFI to defend the Moffatt suit would have the effect of imposing a duty to defend in virtually any commercial contract dispute, and, consequently, would distort the purpose of the liability policy. Id. at 129-30, 655 A.2d at 722.
These statements were made solely in support of our conclusion that the City's conduct triggering the underlying suit was not accidental in nature, and thus was not a covered "occurrence" under the particular language of the NUFI policy. See id. *288 at 129, 655 A.2d at 722-23 ("commonsense definition of accident" would be stretched beyond recognition if we were to base duty to defend on whether insured had precise knowledge of amount or nature of damages that might result from its business decision). They do not govern the question of whether, under the AEGIS exclusionary clause, any "BODILY INJURY, PERSONAL INJURY or PROPERTY DAMAGE" alleged in the Moffatt complaint was "caused intentionally" by the City. Indeed, "the same issue as in NUFI" was raised in AEGIS but resolved in favor of the City because the definition of "occurrence" in the AEGIS policy was more expansive, covering both events and accidents. See AEGIS, 164 Vt. at 220, 669 A.2d at 1183 ("real difference" between NUFI and AEGIS policies lies in content of definition of "occurrence").

II.
AEGIS argues, however, that even if NUFI does not compel summary judgment in its favor under the doctrines of issue preclusion or stare decisis, its "intentional injury" exclusion should apply as a matter of law because all of the injuries suffered by the Moffatts must be deemed intentional under this Court's reasoning in Cooperative Fire Insurance Ass'n of Vermont v. Bizon, 166 Vt. 326, 693 A.2d 722 (1997), and Nationwide Mutual Fire Insurance Co. v. Lajoie, 163 Vt. 619, 661 A.2d 85 (1995) (mem.). These two cases do not support AEGIS's argument.
In Bizon, we upheld the superior court's denial of coverage based on our conclusion that the insured's act of shooting at another person was an "intentional act" within the meaning of the applicable policy's exclusion. See 166 Vt. at 333-34, 693 A.2d at 727. In so ruling, we stressed "that the wording of the policy makes the exclusion applicable when the `act,' not the injury, is intentional," and that a "person who deliberately fires a gun at another knows that it will inflict injury although the shooter cannot necessarily predict the extent of that injury." Bizon, 166 Vt. at 334, 693 A.2d at 727.
Here, in contrast, the AEGIS exclusion denies coverage only when the harm is "caused intentionally." The superior court found the AEGIS exclusion ambiguous as to whether it applied to intentional acts or intentional injuries. But after construing the provision in favor of the insured, see id. at 333, 693 A.2d at 727, the court ultimately concluded that the policy denied coverage only for intentional injuries. We find no ambiguity in the language of the exclusion, which plainly denies coverage for "BODILY INJURY, PERSONAL INJURY, or PROPERTY DAMAGE caused intentionally by or at the direction of such INSURED." Assuming that the City intentionally breached its commercial contract with the Moffatts, that intentional act, in and of itself, did not manifest an intent to cause bodily injury or property damage.
In Lajoie, we upheld the trial court's ruling that the insured's sexual and emotional abuse of his stepdaughter was intentional conduct as a matter of law and not covered under the applicable policy. See 163 Vt. at 620, 661 A.2d at 85. That decision, in which we applied a rule inferring intent to injure in cases involving sexual abuse of a minor, see id.; see also TBH v. Meyer, 168 Vt. 149, 153, 716 A.2d 31, 34 (1998) (extending inferred-intent rule to situations involving nonphysical sexual exploitation of child), has no application here.
The most that can be said from the pleadings and supplementary filings of the parties in this case is that the City could have reasonably expected their reduction in wood chip orders to have an economic impact on the Moffatts. This is a far cry from showing that the City intentionally caused bodily injury or property damage to the Moffatts. Indeed, nothing in the record suggests such an intent, and AEGIS has failed to cite any case law based on even remotely similar facts denying *289 coverage under an intentional-harm exclusion such as the one under review here. Accordingly, summary judgment in favor of the City is appropriate with respect to the claimed exclusion. See City of Burlington v. Glens Falls Ins. Co., 133 Vt. 423, 424, 340 A.2d 89, 90 (1975) (stating general rule that insurance policy exclusions must be strictly construed); First Am. Nat'l Bank v. Fidelity & Deposit Co., 5 F.3d 982, 984-85 (6th Cir.1993) (insurer has burden of establishing that loss results from cause falling within policy exclusion); Gerrish Corp. v. Universal Underwriters Ins. Co., 947 F.2d 1023, 1029-30 (2d Cir. 1991) (under Vermont law, insurance policy exclusions are to be strictly and narrowly construed); Davis v. Liberty Mut. Ins. Co., 19 F.Supp.2d 193, 202 (D.Vt.1998) (to escape duty to defend, insurer has burden of showing that claims against it are entirely excluded from coverage).

III.
Next, AEGIS argues that even if its intentional-harm exclusion is inapplicable here, the City is not entitled to indemnification for the claims of bodily injury alleged in the underlying complaint because those claims are not justiciable. AEGIS further contends that the superior court erred in ruling that AEGIS waived any right to challenge justiciability of those claims by failing to defend against them in the Moffatt suit.
For the most part, the claims of bodily injury in the underlying complaint alleged that the Moffatts suffered various forms of emotional distress, accompanied by a variety of physical manifestations, as the result of the City's conduct and their ensuing financial problems. AEGIS argued before the superior court that because the Moffatts' claims for damages based on emotional distress were not justiciable under Vermont law, either as part of their existing claims or as independent torts, the City was not entitled to indemnification for having settled those claims.
The superior court initially ruled that AEGIS was liable to indemnify the City for the emotional distress claims because they fell within the policy's definition of bodily injuries. In response to AEGIS's motion to reconsider, the court stated that it need not decide whether the Moffatts' emotional distress claims were justiciable under Vermont law because AEGIS's refusal to defend the City in the underlying suit estopped the insurer from challenging the ensuing settlement. The court further found that the City acted reasonably in settling the Moffatt lawsuit and compensating the Moffatts for their claimed bodily injuries because, in a prior summary judgment motion in the underlying suit, the City had challenged the Moffatts' claims to emotional distress damages on much the same grounds as later argued by AEGIS, and the superior court had rejected the City's arguments and denied its motion before the City elected to settle.
Here, on appeal, AEGIS renews its contention that there was no viable claim for emotional distress damages, arguing that (1) emotional distress is not within the scope of incidental damages that may be claimed by a seller as the result of a buyer's breach of a commercial contract for the sale of goods, see 9A V.S.A. §§ 2-708, 2-710; and (2) the Moffatts' claims do not demonstrate that city officials either engaged in the kind of outrageous and extreme conduct necessary to support a claim of intentional infliction of emotional distress, see Jobin v. McQuillen, 158 Vt. 322, 327, 609 A.2d 990, 993 (1992), or negligently inflicted emotional distress upon the Moffatts by placing them in danger and thus subjecting them to a reasonable fear of imminent physical harm. See id. at 328, 609 A.2d at 993. AEGIS further contends that, as the excess insurer, it had no duty to defend, and thus the superior court erred in concluding that it waived its right to challenge the settlement by failing to defend against the underlying suit.
We conclude that provisions in the AEGIS policy obligated the insurer to indemnify *290 the City with respect to that part of the settlement compensating the Moffatts for their claimed bodily injuries. Under the AEGIS policy, the term "bodily injury" explicitly includes "mental anguish" and "emotional upset." The policy requires AEGIS to indemnify the insured for any and all sums that the insured "shall become legally obligated to pay as ULTIMATE NET LOSS by reason of the liability imposed upon the INSURED by law or liability assumed by the INSURED under CONTRACT ... for damages because of BODILY INJURY, PERSONAL INJURY or PROPERTY DAMAGE." (emphasis added). Under the policy, the term "ultimate net loss" includes "all sums which the INSURED shall become legally obligated to pay as damages either by adjudication or compromise with the consent of the COMPANY ... and all expenses incurred by the INSURED in the investigation, negotiation, settlement and defense of any claim or suit seeking such damages." In a section entitled "cooperation and settlements," the policy provides that, in the event of an occurrence "which may involve this POLICY, the NAMED INSURED may, without prejudice as to liability, proceed immediately with settlements." The section further provides that while the insurer may not be required to assume charge of the settlement or defense of a claim, it shall have the right and shall be given the opportunity to associate with the insured and any other insurer in the defense and control of a claim under its policy.
In this case, the City became legally liable to pay a judgment as the result of its settlement with the Moffatts based on underlying facts that constituted an "occurrence" under the AEGIS policy. Further, the Moffatts' claims for bodily injury fell squarely within the definition of bodily injury contained in the AEGIS policy. AEGIS may not have consented to the settlement and may not, as an excess insurer, have had a duty to defend against the Moffatt suit. But having failed to identify its duty to indemnify the City under the policy, AEGIS cannot now avoid that duty by relying on a requirement that it consent to any settlement. Indeed, as noted, under the section in the AEGIS policy specifically addressing settlements, the insured "may, without prejudice as to liability, proceed immediately with settlements" not exceeding the policy limit. To the extent that the AEGIS policy provisions are ambiguous in this regard, they must be construed in favor of the insured. See Bizon, 166 Vt. at 333, 693 A.2d at 727. Accordingly, notwithstanding its arguments to the contrary, AEGIS's contention that the superior court erred by granting summary judgment to the City with respect to the underlying claims for bodily injury is without merit.

IV.
Before addressing AEGIS's final argument challenging the trial court's award of prejudgment interest, we examine the City's arguments on cross-appeal that the trial court erred in (1) concluding that the economic harm claimed by the Moffatts was not covered "property damage" under the AEGIS policy, and (2) declining to award the City full reimbursement for its costs in defending and settling all of the claims in the Moffatt suit.

A.
First, the City argues that because the Moffatts' claims of economic harm fit within the definition of "property damage" contained in the AEGIS policy, the superior court should have required AEGIS to indemnify the City for its defense and settlement of those claims as well as the Moffatts' bodily injury claims. We disagree.
In their complaint, the Moffatts alleged that as the result of the City's conduct (1) they did not receive the profits that their company would otherwise have generated; (2) they were forced to dispose of assets and properties at distressed prices to raise *291 funds to pay creditors; (3) some of their equipment necessary for the business was repossessed, and foreclosure proceedings were commenced against them; (4) their other business, which had previously been profitable, was crippled; (5) their inability to pay off loans because of the City's conduct resulted in their incurring costs associated with additional interest charges, penalty fees, and attorney's fees; (6) their business reputation and standing in the community was permanently damaged; (7) their credit-worthiness was destroyed; and (8) they suffered emotional distress.
Under the applicable AEGIS policy, "property damage" is defined as
(1) physical injury to or destruction of tangible property which occurs during the POLICY PERIOD, including the loss of use thereof at any time resulting therefrom; or (2) loss of use at any time of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an accident or an event or continuous or repeated exposure to conditions during the POLICY PERIOD.
This definition is essentially identical to the general liability insurance policy form that was revised in 1973. In the earlier 1966 version, "property damage" was defined simply as "injury to or destruction of tangible property." Lucker Mfg. v. Home Ins. Co., 23 F.3d 808, 815 (3d Cir.1994). Some courts interpreted this definition broadly to cover nonphysical injuries, while other courts denied coverage when there was no physical contact between the person causing the injury and the property that was damaged. See id.; Eljer Mfg., Inc. v. Liberty Mut. Ins. Co., 972 F.2d 805, 810 (7th Cir.1992). The 1973 revision was intended to resolve this conflict by creating a two-part definition that plainly allowed coverage for both physical and non-physical injuries. See Lucker Mfg., 23 F.3d at 815; Eljer Mfg., 972 F.2d at 810.
Here, as noted, the alleged "property damage" suffered by the Moffatts was loss of profits, assets, equipment, reputation, and credit-worthiness. The superior court found no evidence of any physical injury to, or destruction of, tangible property. Further, the court concluded that the Moffatts' loss of business opportunity with the City, which resulted in lost profits and a subsequent loss of assets used in their business, was purely economic loss not covered as "property damage" under the AEGIS policy.
On appeal, the City contends that the Moffatts lost the use of tangible property equipment and machinery through repossession, and real property through foreclosure proceedingsand that they suffered lost profits and other consequential losses as the result of their loss of that tangible property. The City's argument is not persuasive. The vast majority of courts have held that purely economic losses, such as lost profits, are generally not recoverable under insurance provisions providing coverage for the loss of use of tangible property. See Coulter v. CIGNA Property & Cas. Cos., 934 F.Supp. 1101, 1122-23 (N.D.Iowa 1996); American States Ins. Co. v. Martin, 662 So.2d 245, 248-49 (Ala.1995); L. Ray Packing Co. v. Commercial Union Ins. Co., 469 A.2d 832, 835 (Me.1983). There may be an exception to this general rule when an occurrence causes the loss of use of tangible property, and the loss of use, in turn, then causes economic losses such as lost profits. See, e.g., National Union Fire Ins. Co. v. Structural Sys. Tech., Inc., 756 F.Supp. 1232, 1241 (E.D.Mo.1991) (suggesting that coverage for lost profits and diminution in value would be available because collapse of radio tower resulted in loss of use of tangible property). For example, if a manufacturer of construction cranes sold a defective crane that collapsed in front of, and blocked physical access to, a restaurant, some courts would require the manufacturer's insurer to provide coverage for the loss of use of the restaurant, including lost income. See Lucker Mfg., 23 F.3d at 815 n. 6; see also Continental Cas. Co. v. Gilbane Bldg. Co., 391 Mass. 143, 461 *292 N.E.2d 209, 214 (1984) ("loss of access"). In such situations, coverage for lost profits may be appropriate because the occurrence directly caused a loss of use of tangible property, which resulted in lost income.
The converse situation exists in the instant case. The "event"the City's decision to limit wood deliveriescaused the Moffatts' wood products business to incur a loss of income, which, in turn, had other collateral effects, including the repossession of, and foreclosure on, tangible property. The heart of the underlying claim is that the City's breach of contract caused a loss of business opportunity and thus lost income. Cf. General Ins. Co. of America v. Western Am. Dev. Co., 43 Or.App. 671, 603 P.2d 1245, 1247 (1979) (coverage for "loss of use of tangible property" was not available to purchasers claiming that real property they bought was worth less than they expected because of existence of easement). The loss of use of tangible property was incidental to, and not directly caused by, the "event." Accordingly, the superior court did not err in refusing to extend coverage for the underlying economic-loss claims. See 9 L. Russ & T. Segella, Couch on Insurance 3d § 126:39 (1997) (coverage will not be triggered by loss of use indirectly related to insured occurrence).

B.
The City also argues in its cross-appeal that even if only the bodily injury portion of the Moffatt settlement is covered, the language of the AEGIS policy requires indemnification of all defense costs without apportionment. Again, we disagree.
The superior court concluded that it was appropriate to apportion the covered and noncovered portions of the settlement and costs of defense because the settlement distinguished between claims for bodily injury and those for other noncovered claims. In so ruling, the superior court relied on the following analysis:
Where an insured is forced to defend suit because his insurer denies coverage, the insured may recover attorney's fees expended in that defense if it is determined that the insurer was, in fact, obligated to defend. Buntin v. Continental Insurance Co., 525 F.Supp. 1077, 1083 (D.Vi.1981). Where, however, the suit contains claims which the insurer is not obligated to defend, the question arises whether the insured is entitled to recover all fees expended in defense of the suit. In such a situation, courts generally apportion the fees where the noncovered claims can "clearly be distinguished from the covered claims." Crist v. Insurance Co. of North America, 529 F.Supp. 601, 604 (D.C.Utah 1982). Where the covered and non-covered claims cannot be so distinguished, the insurer will be liable for all fees expended. Id. at 604.
Burlington Drug Co. v. Royal Globe Ins. Co., 616 F.Supp. 481, 483 (D.Vt.1985).
The City notes that some courts in other jurisdictions have taken different approaches from Burlington Drug, but states that this Court need not decide which approach to adopt because the language of the AEGIS policy requires that there be no allocation of defense costs for covered and noncovered claims. The City relies on two policy provisions. The first defines "ultimate net loss" as:
(1) all sums which the INSURED shall become legally obligated to pay as damages either by adjudication or compromise with the consent of the COMPANY. . .; and (2) all expenses incurred by the INSURED in the investigation, negotiation, settlement and defense of any claim or suit seeking such damages . . . .
The second provides that the insurer agrees to indemnify:
The INSURED for any and all sums which the INSURED shall become legally obligated to pay as ULTIMATE NET LOSS by reason of the liability imposed upon the INSURED by law or liability assumed by the INSURED under *293 CONTRACT ... for damages because of BODILY INJURY, PERSONAL INJURY or PROPERTY DAMAGE caused by an OCCURRENCE.
We do not agree that the provisions relied upon by the City require AEGIS to pay for all defense costs regardless of whether they concern covered or noncovered claims. Indeed, under the latter provision, AEGIS's duty to indemnify is limited to the insured's liability resulting from bodily injury or property damage caused by an occurrence. We have already upheld the superior court's ruling that the Moffatts' economic-loss claims were not covered as property damage under the AEGIS policy. Further, insofar as the City relies solely on the language of the policy provisions, and makes no attempt to argue for an allocation rule other than the one set forth in Burlington Drug and adopted by the superior court in this case, we need not consider that question here.

V.
AEGIS's final argument is that even if the Moffatt bodily injury claims are covered, the superior court erred by awarding prejudgment interest on the costs of defense related to those claims. Testimony at an evidentiary hearing revealed that of the $492,859 in legal costs expended by the City in defense of the Moffatt suit, $133,446 was attributable to solely economic damage claims, $2677 was attributable solely to bodily injury damage claims, and the remaining $356,736 was either attributable to fees associated with the City's general defense of liability, or could not be tracked with certainty to bodily injury or economic-loss damage claims. The superior court ruled that AEGIS was required to indemnify the City for $359,413 in legal fees because (1) none of those fees could be allocated exclusively to non-covered economic losses, see Burlington Drug, 616 F.Supp. at 483 (insurer will be liable for all fees that cannot be associated with noncovered claims), and (2) the fees were incurred in defense of liability and thus would have been necessary notwithstanding the existence of noncovered claims. The court then concluded that the City had a right to prejudgment interest because the fees were easily ascertainable. See Estate of Fleming v. Nicholson, 168 Vt. 495, 501, 724 A.2d 1026, 1030 (1998) (award of prejudgment interest is mandatory when damages are readily ascertainable, and is discretionary in other circumstances).
AEGIS contends that the fees were not readily ascertainable because the bulk of the defense costs associated with the two types of claims were scrambled in a massive billing ascertainable only by the attorney who was familiar with the billing. We find no error. As noted, the superior court concluded that the City was entitled to the $359,413 in fees because it would have incurred those fees even if the non-covered claims had not existed. AEGIS does not challenge this conclusion. Nor does AEGIS suggest that the claimed legal work was not done, or that the amount of the fees was unreasonable. Accordingly, the superior court correctly determined that the fees were ascertainable and thus subject to prejudgment interest.
Affirmed.