Nicom Coatings Corp. v. Acadia Insurance Co., No. 523-8-02 Wncv (Teachout, J., July 21, 2003)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
WASHINGTON COUNTY, SS.

| | | |
|---|---|---|
| NICOM COATINGS CORPORATION, | ) | |
| Plaintiff, | ) | |
| | ) | Washington Superior Court |
| v. | ) | Docket No. 523-8-02 Wncv |
| | ) | |
| ACADIA INSURANCE COMPANY, | ) | |
| Defendant. | ) | |

**Decision on Defendant's Motion for Summary
Judgment**

In this action for a declaration concerning insurance coverage and a duty to defend, Defendant Acadia Insurance Company (Acadia) seeks judgment pursuant to Rule 56, claiming no coverage and no duty to defend as a matter of law in an underlying lawsuit filed against its insured, Nicom Coatings Corporation (Nicom). Nicom is represented by Leighton C. Detora, Esq.; Acadia is represented by Kaveh Shahi, Esq. For the following reasons, summary judgment is denied to Acadia and granted to Nicom on the issue of the duty to defend. The parties agree that only the issue of the duty of defense is ripe at this time.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. See V.R.C.P. 56(c)(3).

The following facts are undisputed. Nicom is a waterproofing contractor in the business of, among other things, applying waterproof membranes to bridge decks on interstate highways. On January 23, 2001, the State of New Hampshire filed suit in New Hampshire against Pike Industries, Inc. (Pike), Nicom, DEW Pitchmastic (Pitchmastic), and R.J. Watson, Inc. (Watson).

In the underlying complaint, the State of New Hampshire alleges as follows: in 1998, the

State Department of Transportation contracted with Pike for a pavement rehabilitation project on Interstate 93. The project involved, at least in part, work on a bridge. Specifically, the work included removal of the existing asphalt bridge deck, rehabilitation of the concrete bridge deck, re-application or application of an approved membrane product, and re-paving of the bridge deck surface area. In the course of this work, Pike contracted with Nicom, which, in conjunction with other aspects of the overall project, applied a membrane produced by Pitchmastic and supplied by Watson. On February 17, 1999, the State of New Hampshire accepted the project as complete. Within a few weeks, large areas of the pavement on the bridge dislodged from rehabilitated areas, creating dangerous potholes. To expedite repairs, the State of New Hampshire paid Pike to repair the bridge deck. Nicom tendered the defense of the New Hampshire suit to its Commercial General Liability insurer, Acadia. Acadia declined to defend and Nicom eventually filed this declaratory judgment action for determination of Acadia's duties of defense and indemnification.

The underlying complaint asserts two "counts." In Count I, characterized as "breach of contract," the State of New Hampshire alleges that the defendants (without distinguishing among the four of them): a) failed to install the "membrane and asphalt systems" with workmanlike quality because they were applied in thicknesses outside acceptable ranges on "improperly prepared surfaces"; and b) failed to apply an appropriate "tack" material between the membrane and asphalt. In this count, the State asserts that defendants breached the implied warranty of merchantability and the implied warranty of workmanlike quality, and claims that defendants refused to pay "for costs associated with the failure of this product." Count II, characterized as "quantum meruit," seeks a refund of monies paid to defendants to avoid unjust enrichment due to failure to deliver a product free of defects.

"In construing an insurance policy, disputed terms should be read according to their plain, ordinary and popular meaning." State v. CNA Ins. Cos., 172 Vt. 318, 324 (2001). "We have often explained that an insurer's duty to defend is broader than its duty to indemnify. Generally, the insurer's duty to defend is determined by comparing the allegations in the complaint of the underlying suit to the terms of coverage in the policy. If any claims are potentially covered by the policy, the insurer has a duty to defend. Conversely, where there is no possibility that the insurer might be obligated to indemnify, there is no duty to defend." City of Burlington v. Nat'l Union Fire Ins. Co., 163 Vt. 124, 127 (1994) (citations omitted).

In support of summary judgment, Acadia argues that there is no policy coverage for any potential claims in the underlying complaint, and therefore it owes Nicom no duty of defense. Specifically, Acadia argues that no "occurrence" exists on the facts alleged in the underlying complaint, and even if one did, several exclusions would bar coverage.

<u>"Occurrence"</u>

The only potentially applicable coverage under the policy is found in Coverage A, "Bodily Injury and Property Damage Liability." Coverage A states in part: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or

2

'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. . . ." Policy § I, Coverage A(1)(a). The underlying lawsuit concerns only a claim for "property damage," which is defined in the policy as follows:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Policy § V, Definitions § 17. The insuring agreement covers property damage only if it is "caused by an 'occurrence.'" Policy § I, Coverage A(1)(b)(1), (2).

Acadia argues that the alleged property damage was not caused by an occurrence. Under the policy, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Policy § V, Definitions § 13. The policy does not define "accident." The Vermont Supreme Court has defined "accident" as a component of an "occurrence" in general liability policies as an "unexpected happening without intention and design." Anton v. Fidelity & Casualty Co., 117 Vt. 300, 305 (1952), quoted in City of Burlington v. National Union Fire Ins. Co., 163 Vt. 124, 128. It has also reviewed the history of the terms as they have been used in CGL policies, which shows that the term "occurrence" represents "a more expansive concept" than "accident." Northern Security Ins. Co. v. Perron, 172 Vt. 204, 210 (2001).

Acadia argues that City of Burlington is the controlling case, and that it stands for the principle that under Vermont law, suits based on contract claims are inherently inconsistent with the existence of an "occurrence" as defined in a general liability policy, as the consequences of a contracting party's breach of its contractual obligations cannot constitute an "accident" or "occurrence." Acadia argues that the underlying allegations in this case merely involve commercial entities acting in their own economic interests in making decisions about contractual obligations, as in City of Burlington, and therefore no "accident" or occurrence could have caused any property damage.

City of Burlington was an action by an insured against the insurer for defense costs and indemnity. The primary claim in the underlying suit was that the insured (City) breached a contract with its wood chip suppliers by refusing to purchase the volume of wood chips that it had previously contracted to buy. The "harm" to the underlying plaintiffs (suppliers) was the lack of the economic benefit of that bargain. The trial court held that the insurer had no duty to defend or indemnify. City of Burlington, 163 Vt. at 125-26. In affirming the decision of the trial court, the Supreme Court distinguished the case from those in which "the insured intended no injury to the party who brought the claim(s) for which coverage was sought." Id. at 129.

3

Because the insured in City of Burlington "intended or expected economic injury to the wood chip suppliers when it reduced its purchases from them," there was no "accident" sufficient to demonstrate any "occurrence." Id. The Court noted that the "characterization of the claims as sounding in tort or contract is not necessarily determinative" of whether coverage is available Id. at 130. The facts themselves, rather than the label on the claim, must be analyzed to determine whether there has been an "occurrence" as defined in a CGL policy. Id.

The facts in City of Burlington demonstrate a straightforward breach of a supply contract, and are unlike those in this case. The complaint in the underlying case against Nicom alleges that potholes formed in the travel surface of the bridge as a consequence of Nicom's work in installing a membrane. The allegation is that Nicom's installation of the Pitchmastic membrane created a defect in the structure of the bridge deck which in turn caused the road surface on the bridge to crumble. The claim is not that there was anything wrong with the membrane, but that Nicom's work damaged the bridge surface. Notwithstanding that the complaint in the underlying lawsuit characterizes the chief claim as sounding in contract, the claim is for property damage to the bridge which, it must be inferred, was not intended. The essence of the claim as stated in the complaint is unexpected damage to the travel surface of the bridge deck as a whole, including potholes that caused damage to passing vehicles.

The State of New Hampshire is not claiming economic loss due to loss of a contractual bargain, as in City of Burlington. Rather, it is claiming, in essence, that damage to the bridge resulted from the "continuous and repeated exposure" of various components of the bridge deck (e.g., the pavement surface that Nicom did not lay down) to the membrane that was improperly installed by Nicom. This was damage to State property and not merely damage confined to work performed only by Nicom. In the opinion in J.Z.G. Resources, Inc., v. King, 987 F.2d 98, 101-03 (2d Cir. 1993), the court construes the definition of "occurrence," concluding that it applies only to damage to property other than the faulty work product itself. While ultimately concluding that the damage at issue in the case was confined to the insured's own faulty work, and therefore there was no "occurrence," the analysis is more instructive to the facts of this case than is the analysis in City of Burlington. See also the analysis of the Michigan Court of Appeals in Hawkeye-Security Ins. Co. v. Vector Const. Co., 460 N.W. 2d 329 (1990), affirming denial of coverage for "damages done [by the insured] to its own work product" under an "occurrence" analysis. Id. at 377. The court compared the facts before it with those in Bundy Tubing Co. v. Royal Indemnity Co., 298 F.2d 151 (C.A.6. 1962), in which the Sixth Circuit concluded, under an "accident" analysis, that failure of defective tubing incorporated into a home heating system, resulting in a nonfunctioning heating system, "damaged the property of others" where the concrete flooring in which the tubing was embedded had to be removed and replaced, and the insurer was therefore obliged to cover damages for those remediation costs. Id. at 153.

Because the allegations of the underlying complaint claim property damage resulting from an occurrence within the terms and meaning of the insuring agreement, Acadia's duty to defend was triggered, unless an exclusion necessarily bars coverage.

4

Exclusions

Acadia claims that several exclusions bar coverage: (b) (contractual liability), (k) (damage to insured's product), (l) (damage to insured's work), and (m) (impaired property). Although Acadia also identified exclusion (n) (recall of work) as a basis for exclusion, it made no argument with respect to exclusion (n), and has thus failed to show that the exclusion applies. See City of Burlington v. Assoc. Elec. & Gas Ins. Servs., 170 Vt. 358, 364 (2000).

Acadia first argues that the "Contractual Liability" exclusion bars coverage. Policy § I, Coverage A(2)(b). That exclusion, in part, applies to the following:

> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> > (1) That the insured would have in the absence of the contract or agreement.

Citing TGA Development, Inc. v. Northern Ins. Co. of New York, 62 F.3d 1089 (8th Cir. 1995), Acadia argues that this exclusion bars coverage for any claim sounding in contract. The TGA Development court concluded that the exclusion barred coverage of an underlying contract claim based exclusively on the failure to deliver to the underlying plaintiff "a condominium unit free from defects." Id. at 1092. Those facts are not analogous to the allegations in the underlying complaint in this case. There was no allegation in TGA Development, as there is in this case, that a defect caused property damage to property other than the work product itself.

Moreover, subsection (1) preserves coverage where the insured would be liable regardless of the contract. The operative "assumption of liability" language in the exclusionary clause calls for an ordinary reading of the verb "assume," and refers to an indemnification agreement or similar agreement to take on liability that would not otherwise attach, rather than to a situation in which liability arises as a result of active wrongdoing. An appellate court in Arkansas recently responded to Acadia's argument as follows:

> . . .[N]umerous . . . cases and authority, which we find more persuasive, have held that the exclusion's "assumption of liability" language means that it operates to deny coverage when the insured has promised to indemnify or hold harmless another person. See Federated Mut. Ins. Co. v. Grapevine Excavation, Inc., 197 F.3d 720 (5th Cir.2000); Action Auto Stores, Inc. v. United Capitol Ins. Co., 845 F.Supp. 428 (W.D.Mich.1993), and cases cited therein. See also 21 Holmes' Appleman on Insurance 2d §§ 132.3, at 36-37 (2002), which reads:
>
> > Although, arguably, a person or entity assumes liability (that is, a duty of performance, the breach of which will give rise to liability) whenever one enters into a binding contract, in the CGL policy and

5

> other liability policies an "assumed" liability is generally
> understood and interpreted by the courts to mean the liability of a
> third party, which liability one "assumes" in the sense that one
> agrees to indemnify or hold the other person harmless.
>
> Any intent to exclude coverage in an insurance policy should be expressed in clear and unambiguous language, and the burden is upon the insurance company to present facts that come within the stated exclusion. Union Bank Ins. Co. v. National Bank of Commerce, 241 Ark. 554, 408 S.W.2d 898 (1966). Further, any ambiguity in an exclusionary clause must be construed strictly against the insurance company and liberally in favor of the insured. Id. The contractual liability exclusion here could be interpreted to apply only to indemnity-type contracts rather than situations like the one before us in which Mallard seeks to hold Golf Cars liable for its own actions. Thus, the exclusion is ambiguous, and the interpretation favoring the insured should be adopted. We therefore do not consider this exclusion as a basis for affirmance. Golf Cars of Arkansas, Inc. v. Union Standard Ins. Co. WL 21229106, *4 -5 (Ark.App.,2003)

Acadia's interpretation requires the elimination of the phrase "the assumption of liability in" in the first sentence of exclusion (b), and makes the last sentence, including subsection (1), meaningless. The underlying complaint of the State of New Hampshire against Nicom includes no allegations that its claim against Nicom is predicated on an assumption of liability. On the contrary, it claims liability based on faulty work. Exclusion (b) does not relieve Acadia of the duty to defend.

Next, Acadia argues that the "Damage to Your Product" exclusion bars coverage to some extent. Policy § I, Coverage A(2)(k). The "Damage to Your Product" exclusion excludes coverage for "'Property damage' to 'your product' arising out of it or any part of it." "Your product" means:

a.     Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1)     You;

(2)     Others trading under your name; or

(3)     A person or organization whose business or assets you have acquired; and

b.     Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

6

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

Policy § V, Definitions § 20.

Acadia also argues that the similar "Damage to Your Work" exclusion bars coverage to some extent. Policy § I, Coverage A(2)(l). That exclusion excludes coverage for:

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

"Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

Policy § V, Definitions § 21.

Acadia argues that the Pitchmastic membrane installation performed by Nicom falls under either or both "your work" and "your product" and the related exclusions. The court need not address these arguments because, as discussed above, the underlying complaint potentially involves property damage not merely to the work of Nicom or products installed by it, but damage to other parts of the bridge. These exclusions therefore do not necessarily bar all coverage.

Lastly, Acadia argues that the "Damage to Impaired Property Or Property Not Physically Injured" exclusion bars coverage. Policy § I, Coverage A(2)(m). That exclusion excludes coverage for:

7

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

      (1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

      (2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Acadia argues that this exclusion applies because the surface of the bridge is "impaired property" arising out of a defect in the work or product of Nicom.

This exclusion does not apply because the damaged portion of the bridge potentially is not impaired property. "Impaired property" means:

"Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

      a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

      b.    You ... failed to fulfill the terms ... a contract or agreement;

if such property can be restored to use by:

      a.    The repair, replacement, adjustment or removal of "your product" or "your work"; or

      b.    Your fulfilling the terms of the contract or agreement.

Policy § V, Definitions § 8. Assuming that the bridge surface became less useful because it incorporated the work or product of Nicom and/or because Nicom failed to fulfill the terms of its contract, the bridge surface nonetheless is not "impaired property" subject to the exclusion unless the repair of Nicom's work or product, or fulfillment of its contract, would cure the problem. The allegations of the underlying complaint leave no question that the damage to the surface of the bridge could not have been cured by merely reapplying the membrane correctly. Rather, the harm to the bridge surface itself had to be remediated separate and apart from merely curing the allegedly defective membrane application. The damaged surface of the bridge thus is not

necessarily "impaired property" within the scope of the impaired property exclusion, which therefore does not apply.

Because, based on the allegations of the underlying complaint, the court cannot conclude that there is no possibility that the policy covers the claims against Nicom, Acadia is obligated to defend Nicom.

### Order

For the foregoing reasons, summary judgment is *denied* to Acadia and *granted* to Nicom on the duty to defend.

Dated at Montpelier, Vermont this __ day of July, 2003.

_____
Mary Miles Teachout
Superior Court Judge